# NORTH AMERICAN TRANSPORTATION & TRADING COMPANY v. MORRISON.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

No. 203. Submitted March 20, 1900.—Decided May 21, 1900.

Where a plaintiff asserts, as his cause of action, a claim which he cannot be legally permitted to sustain by evidence, a mere *ad damnum* clause will not confer jurisdiction on the Circuit Court, but the court on motion or demurrer, or of its own motion, may dismiss the suit.

In the circumstances disclosed by the plaintiff's declaration, and in the certificates of the trial judge, the defendant company, though liable in a court of competent jurisdiction for the other claims asserted, cannot be held for the amount of wages or profits which the plaintiff suggests he might have earned had he reached Dawson City.

THIS was an action originally brought in December, 1897, in the Superior Court of the State of Washington for King County, by Donald Morrison against the North American Transportation and Trading Company, and subsequently, on petition of the defendant company, removed to the Circuit Court of the United States for the District of Washington. To the declaration, containing several counts, the defendant demurred. The demurrer was overruled, and the cause was tried before the District Judge and a jury. After verdict and judgment in favor of the plaintiff, the District Judge certified the following statement of facts and questions of jurisdiction to this court:

"I, C. H. Hanford, District Judge, presiding in the Circuit Court aforesaid, and the judge before whom the above-entitled cause was tried, do now, on the 29th day of December, 1898, being the December term, at which the judgment and verdict were entered herein, certify as follows:

"Morrison, the plaintiff, alleging himself to be a citizen and resident of the State of Minnesota, began this action in the Superior Court of King County, State of Washington, against the defendant, alleging it to be a corporation organized and ex-

isting under the laws of the State of Illinois, and engaged in business in the State of Washington. The suit was upon eight causes of action, the first on plaintiff's own account, the other on account of seven alleged assignors of plaintiff. The citizenship of these assignors was nowhere alleged.

" Defendant removed the case to this court on the ground of diversity of citizenship between it and plaintiff Morrison, and the involving of a sum exceeding two thousand dollars, exclusive of interest and costs. After removal defendant demurred to each cause of action in the complaint as not sufficient to constitute a cause of action, and as to the last seven causes of action on the additional ground that the court had no jurisdiction to hear it, and this was overruled, with exception to defendant. Issue was then joined, and, after two trials, judgment was entered as now complained of in error in the sum of $2119.50. After the verdict and before judgment defendant moved to dismiss or remand the whole cause and each cause of action on the ground that as to the first cause of action it did not involve two thousand dollars, exclusive of interest and costs, and as to the second and each subsequent cause of action —that is to say, as to the assigned causes of action—that each of these did not involve two thousand dollars, exclusive of interest and costs, and because, also, it did not appear that proper diversity of citizenship existed at the time of the commencement of the action, or at the time of its removal, between the assignors of plaintiff and defendant so as to confer jurisdiction upon the Federal court; which said motion to dismiss and remand was denied, with exception to defendant.

" The original complaint shows that the aggregate sum sued for by Morrison was $18,173.50, divided, as already stated, into eight causes of action. The suit was upon eight contracts of carriage, between defendant as a carrier and plaintiff and his seven assignors, from Seattle to Dawson City, by way of St. Michaels and the Yukon River, which contracts were alleged to have been broken by the carrier by failure and refusal to transport the passengers farther than Fort Yukon on the river.

" The first cause of action — that of plaintiff himself — alleged himself to be a citizen and a resident of Minnesota and defend-

ant a corporation organized and existing under the laws of the State of Illinois. The contract was alleged to have been made at Seattle on the 30th day of July, 1897, and the agreed date of the delivery of the plaintiff at Dawson by the carrier was alleged to be September 15, 1897, and this suit was brought on the 17th day of November, 1897. On the breach of the contract at Fort Yukon, plaintiff alleged himself compelled to return to Seattle. The damages claimed by him were as follows: (*a*) The price of his ticket from Seattle to Dawson City, $200.00; (*b*) $72.50, returning to Seattle after the breach of contract at Fort Yukon; (*c*) expense of one dollar a day and loss of time at three dollars a day at Seattle since his return there, the 18th day of October, 1897; (*d*) three dollars a day from the 30th day of July, 1897, which he could have earned if he had not started on the journey at all; (*e*) fifteen dollars a day which he could have earned for a year at Dawson after the 15th day of September, 1897; (*f*) lost baggage, $29.50; the total prayer of this cause of action being $2301.75.

"The second and subsequent causes of action, being the assigned causes, arose on exactly similar contracts of carriage. The citizenship of the respective assignors was not averred. The damages claimed were exactly the same as those claimed by plaintiff himself, excepting that none of the assignors claimed the item of lost baggage, and that the item of cost in returning from Fort Yukon to Seattle was as low as $61.50 in some instances, and as high as $103.25 in others. The lowest sum claimed by any of the assignors as his total damage was $2261.25, and the highest claimed was $2303.25.

"Neither in the original nor the assigned causes of action was it alleged that any of these passengers had ever lived in Dawson before, had any previous engagement or business there, or any promise of employment, the allegation in each cause of action as to the passenger's damage in this respect being that 'he could have obtained employment and engaged in business by him competent to perform and transact at or about said Dawson City, and thereby secured wages and profits at the rate of fifteen dollars per day continuously from September 15, 1897, for the period of the year thence next ensuing,' and that 'he

has wholly lost all of said employment and time, and all of said wages and profits, to his damage in the sum of $2000.' It was not alleged what, if any, occupation either plaintiff or any of his assignors had before departure on the journey, nor was it alleged what occupation was expected at the point of destination, or that any expected occupation was communicated to the defendant.

" Now, therefore, I do certify to the Supreme Court the following question of jurisdiction, as follows:

" Whether the motions to dismiss and to remand should have been granted because at the time of removal to this court the cause was one of which this court could not take jurisdiction — that is to say, whether —

"(*a*) In each of the causes of action the sum or value of the matter actually in dispute, as shown in the pleadings was less than two thousand dollars, exclusive of interest and costs, and a controversy was involved substantially within the jurisdiction of this court; and whether —

"(*b*) If the foregoing be answered in the affirmative, the amounts claimed in the assigned causes of action could be united to that in the first to make up the jurisdictional amount, the citizenship of the assignors not being alleged; and whether —

"(*c*) Supposing the jurisdictional amount was sufficient in each cause of action, the case was even then removable to this court when the necessary diversity of citizenship was alleged only in the first cause of action, and was not alleged in those assigned."

*Mr. Frederick Bausman* for plaintiff in error.

*Mr. John Arthur* and *Mr. L. H. Wheeler* for defendant in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

This is a suit by Donald Morrison, alleging himself to be a citizen of the State of Minnesota, against the North American

Transportation and Trading Company, a corporation of the State of Illinois, for damages arising out of a breach of a contract whereby the transportation company had agreed to carry the plaintiff and his baggage from Seattle in the State of Washington to Dawson City in the Northwest Territory, in the Dominion of Canada.

It is conceded that the defendant company failed, without sufficient excuse, to fulfill its engagement, and the question upon which the jurisdiction of the court below depended is as to the nature and amount of the damages to which the plaintiff is entitled. The allegations in the complaint in that respect were, first, the sum paid by the plaintiff as a fare being $200; second, the expenses caused by having to return to Seattle, amounting to $72.50; third, the wages which he could and would have earned at Seattle if he had not proceeded upon the attempted journey, being wages at the rate of three dollars per day during all the time intervening between August 3, 1897, and November 17, 1897, amounting to about $320; fourth, the loss of a certain portion of plaintiff's baggage, amounting to $29.25; and, fifth, the loss occasioned plaintiff by the defendant's failure to transport him to Dawson City, "where the plaintiff could have obtained employment and engaged in business which he was competent to perform and transact, at or about Dawson City, and thereby have secured wages and profits at the rate of fifteen dollars per day continuously from September 15, 1897, for the period of the year next ensuing;" "by reason whereof there is due and owing the plaintiff from the defendant by reason of the premises, for said expenditures, outlay and damages, the sum of two thousand three hundred and one dollars and seventy-five cents."

It was obvious, on the face of the plaintiff's complaint, that if he was not entitled to recover the money which he alleged "he could have earned and secured by obtaining employment and engaging in business at or about Dawson City," the amount necessary to give the Circuit Court jurisdiction was not involved.

While it has sometimes been said that it is the amount claimed by the plaintiff in his declaration that brings his case within the jurisdiction of the Circuit Court, that was in suits for un-

liquidated damages, in which the amount which the plaintiff was entitled to recover was a question for the jury; an inspection of the declaration did not disclose and could not disclose but that the plaintiff was entitled to recover the amount claimed, and hence, even if the jury found a verdict in a sum less than the jurisdictional amount, the jurisdiction of the court would not be defeated. *Barry* v. *Edmunds,* 116 U. S. 550; *Scott* v. *Donald,* 165 U. S. 58, 89.

But where the plaintiff asserts, as his cause of action, a claim which he cannot be legally permitted to sustain by evidence, a mere *ad damnum* clause will not confer jurisdiction on the Circuit Court, but the court on motion or demurrer, or of its own motion, may dismiss the suit. And such, we think, was the present case.

We do not consider it necessary to enter upon a discussion of the rule that a person is not to be held responsible in damages for the remote consequences of every negligent act, but only for those which are proximate or natural, and shall content ourselves by stating our conclusion that, in the circumstances disclosed by the plaintiff's declaration and in the certificate of the trial judge, the defendant company, though liable in a court of competent jurisdiction for the other claims asserted, cannot be held for the amount of wages or profits which the plaintiff suggests he might have earned had he reached Dawson City.

In the District Judge's certificate it is stated that the plaintiff did not allege that he had ever lived in Dawson City before, or had any previous engagement or business there or any promise of employment; that it was not alleged what, if any, occupation the plaintiff had before his departure on the journey, nor what occupation was expected at the point of destination, or that any expected occupation or employment was communicated to the defendant company.

The plaintiff was traveling to a land of promise, hoping to there procure some occupation, he knew not what, or to engage in some business, he knew not what. The result of such an adventure cannot be foretold, and the plaintiff's anticipations afford no safe ground on which to base a claim for damages.

If, then, the plaintiff in respect to his own claim, did not dis-

close a case of which the Circuit Court had jurisdiction, did he overcome that difficulty by the additional counts in which he alleged himself to be the assignee of several other voyagers who had suffered loss and damages similar to those claimed by him on his own behalf? The citizenship of the assignors was not alleged, and the greater portion of the respective claims. consisted of matter which we have held in reference to plaintiff's own claim to be too remote and uncertain to be allowed.

It is somewhat uncertain, upon the facts alleged in the declaration and those stated to us in the certificate of the District Judge, whether if all the claims, as well those assigned and those held by the plaintiff in his own right, omitting those which we have held to be too remote and uncertain, were aggregated, they would reach the necessary jurisdictional amount. But however that may be, as it is not alleged that the assignors could have themselves prosecuted suit in the Circuit Court, it is the settled construction of the statutes of the United States that the suit cannot be maintained in favor of the assignee.

*Serè* v. *Pitot*, 6 Cranch, 332, was an action commenced to foreclose a mortgage given by a citizen of Louisiana to another citizen of the same State. The language of the judiciary act of 1789 was as follows: "Nor shall any District or Circuit Court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made." 1 Stat. 78. The plaintiff was the general assignee in insolvency of the mortgagor, and was an alien; and it was said by Chief Justice Marshall, delivering the opinion of the court:

"Without doubt assignable paper, being the chose in action most usually transferred, was in the mind of the legislature when the law was framed, and the words of the provision are, therefore, best adapted to that class of assignments. But there is no reason to believe that the legislature were not equally disposed to except from the jurisdiction of the Federal courts those who could sue in virtue of equitable assignments and those who could sue in virtue of legal assignments. The assignee of all the open accounts of a merchant might, under certain circumstances, be

permitted to sue in equity in his own name, and there would be as much reason to exclude him from the Federal courts as to exclude the same person when the assignee of a particular note. The term 'other chose in action' is broad enough to comprehend either case, and the word 'contents' is too ambiguous in its import to restrain that general term. The contents of a note are the sums it shows to be due, and the same, without much violence to the language, can be said of an account."

And the same construction was put upon the language of the act of August 13, 1888, c. 866, 25 Stat. 433. *Mexican National Railroad* v. *Davidson*, 157 U. S. 201.

We do not think that it was competent for the plaintiff to add to his own cause of action, in order to obtain jurisdiction in the Circuit Court, claims assigned by those whose citizenship and residence did not appear either in the complaint or in the petition for removal. As, however, the plaintiff brought his action in the state court, where he was entitled to join the assigned claims with his own, and as the case was removed into the Federal court at the instance of the defendant company, whose motion to remand the case we are now obliged to sustain, we impose the costs in the Circuit Court and in this court on the North American Transportation and Trading Company, the plaintiff in error.

These views render it needless to answer severally the questions certified.

*Accordingly the judgment of the Circuit Court is reversed, and the cause is remanded to that court, with directions to remand the cause to the state court.*