BRICKHOUSE v. BROOKS et al.

(Circuit Court, E. D. Virginia. November 5, 1908.)

1. COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

An action against election officers to recover damages for the wrongful rejection of plaintiff's vote for a member of Congress is one arising under the Constitution of the United States, and is within the jurisdiction of a federal court, where the damages are laid at more than $2,000.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 820; Dec. Dig. § 282.*

Jurisdiction in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.]

2. COURTS (§ 328*) — JURISDICTION OF FEDERAL COURTS — AMOUNT IN CONTROVERSY.

In an action under Rev. St. § 1979 (U. S. Comp. St. 1901, p. 1262), to recover damages for depriving plaintiff of rights secured to him by the Constitution and laws of the United States under color of a state statute or law, the plaintiff is not required to allege that defendants acted maliciously, and a failure to do so does not authorize the court to determine as matter of law that only nominal damages are recoverable, and that therefore the action is not within the jurisdiction of a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 890; Dec. Dig. § 328.*

Jurisdiction of federal courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

3. CONSTITUTIONAL LAW (§ 68*) — JUDICIAL POWERS — POLITICAL QUESTIONS—ADOPTION OF CONSTITUTION.

Whether a state Constitution was duly ordained by the people of the state is a political question, and where it has been promulgated and recognized as valid and in force by the executive and legislative departments of the state, and accepted and acquiesced in by the people, the legality of its adoption cannot be brought in question in a federal court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 125; Dec. Dig. § 68.*]

At Law. On demurrer to declaration and plaintiff's demurrer to special plea.

John S. Wise and Carter & Hays, for plaintiff.

William A. Anderson, R. C. Marshall, and Frank W. Christian, for defendants.

GOFF, Circuit Judge. This suit was instituted by virtue of section 1979 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1262), which reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit or equity, or other proper proceeding for redress."

The plaintiff claims damages of the defendants because of their refusal of his vote at an election held on November 4, 1902, in the

Second congressional district of the state of Virginia, at Huntersville precinct, of Norfolk county, when a representative in the Congress of the United States was voted for; the plaintiff in his declaration alleging that he was then a citizen of the United States, and a citizen and resident of the state of Virginia possessing all the qualifications of a voter under the Constitutions of the United States and of the state of Virginia, and entitled to cast his vote for such representative at said election; that the defendants were the judges of election at said precinct, duly appointed and acting as such at that election, and that it was their duty to accept his ballot and deposit it in the ballot box; that on the day mentioned, and during the time that the defendants were holding said election, the plaintiff, a lawful voter, presented himself to said defendants as such judges and tendered to them his ballot in form and manner as required by the laws of the state of Virginia, and requested them to receive his vote and permit him to cast his ballot at such election; that the defendants unlawfully refused to treat the plaintiff as a lawful voter at said precinct, and did then and there hinder and prevent the plaintiff from voting, and did unlawfully deprive him of his right to vote at said election, to the damage of the plaintiff $5,000.

The defendants appeared and moved the court for an order, which was granted, requiring the plaintiff to file a statement of the particulars of the claim for damages asserted in his action, especially stating upon what set of registration books he claimed to have been registered as a voter on November 4, 1902, whether he was registered upon the books of registration made up under the Constitution and ordinance of the state of Virginia which took effect on July 10, 1902, or whether he was registered on the registration books made up under the Constitution and laws of the state of Virginia which existed prior to July 10, 1902.

The plaintiff, complying with this order of court, filed a statement in which he said that at the time of such election he was duly registered at said precinct upon the registration books made up for it under the Constitution and laws of the state of Virginia, which were in force immediately prior to July 10, 1902, which he alleged were in force on the 4th day of November, 1902, and that he relied upon that registration for his right to vote at that election; that on said day of election he was or should have been registered upon certain other books of registration made up under a certain alleged Constitution and ordinance of the state of Virginia, which defendants claim took effect on July 10, 1902, but which plaintiff alleges were, together with the registration said to have been made pursuant thereto, null, void, and of no effect, which in no wise affected his right to vote at that election, which he claimed was derived by him from his having duly registered as a voter at such precinct under the Constitution and laws of the state of Virginia in force prior to the enactment of said alleged Constitution of July 10, 1902, and the ordinance and registration thereunder, plaintiff declaring that he claimed no right whatever under such spurious Constitution and ordinance which is said to have taken effect on July 10, 1902, or under the registration made thereunder.

The defendants then demurred to the plaintiff's declaration, assigning as cause therefor that this court has no jurisdiction of this suit, as the declaration does not state a case arising under the Constitution and laws of the United States; because the acts of defendants complained of are not alleged to have been malicious or corrupt, and consequently a verdict for $2,000 damages would be so excessive that the court would be required to set it aside, and therefore the amount of damages alleged in the declaration is merely colorable, for the purpose of giving jurisdiction to the court; that the declaration does not allege any wrongful acts on the part of the defendants, or any cause of action against them, for the following reasons: (a) It does not allege that the plaintiff was entitled to register and vote in accordance with the provisions of the Constitution and ordinance of registration of Virginia which took effect on July 10, 1902, and the act of the General Assembly of Virginia of July 28, 1902 (Laws Ex. Sess. 1902–04, p. 11, c. 10); (b) it does not allege that the plaintiff's name was entered as a registered voter on the registration books which were in the hands of the judges at the Huntersville precinct on the day of the election mentioned in it, to wit, November 4, 1902; (c) it does not allege that the acts of the defendants complained of were maliciously corrupt or willfully wrongful—and also because it fails to allege under what Constitution and law of Virginia, and upon what registration books, the plaintiff was registered as a voter at Huntersville precinct on said election day. The plaintiff duly filed a joinder in such demurrer.

The defendants also tendered severally their plea of not guilty and put themselves upon the country, and the plaintiff joined issue on the plea of not guilty. The defendants then tendered a special plea, in which they alleged that the plaintiff ought not to have and maintain his action against them, because that the General Assembly of Virginia, by an act approved March 5, 1900 (Laws 1899–1900, p. 835, c. 778), did in accordance with the then existing Constitution of Virginia, provide that the question, "Shall there be a convention to revise the Constitution and amend the same?" should be decided by the electors qualified to vote for members of the General Assembly at an election to be held on the fourth Thursday in May, 1900; that the said act provided the method for holding such election and declaring the result thereof; that an election was duly held pursuant to said act, and that a majority of the qualified electors voting thereat decided in favor of a convention for the purpose mentioned, and that an act was duly passed, entitled "An act to provide for the selection of delegates to the Constitutional Convention, for the convening of said delegates, the organization of the convention, and for submitting the revised and amended Constitution to the people of the state of Virginia for ratification or rejection"; that the act provided that delegates to the convention should be elected on the fourth Thursday in May, 1901, apportioned the representation therein among the different counties and cities of the state, declared the manner of conducting the election and announcing the result thereof, provided that the persons elected should on Wednesday, June 12, 1901, at 12 o'clock, meet in the hall of the House of Delegates at the Capitol in the city of Richmond, in general

convention to consider, discuss, and propose a new Constitution, or alterations and amendments to the existing Constitution, and that such revised and amended Constitution should be submitted to the qualified voters of the commonwealth for ratification or rejection; that so much of said act as provided for the election of delegates to the convention and the assembling of the convention was constitutional and valid, but that the part thereof which undertook to restrict the power of the convention to proposing a new Constitution and to require the same to be submitted to the qualified voters of the commonwealth for ratification or rejection was unconstitutional and invalid; that the election for delegates to said convention was duly held, and that the delegates elected assembled in general convention in conformity with said act, and proceeded to frame and adopt a revised and amended Constitution for the commonwealth of Virginia, as well as a schedule and ordinance of registration, which was appended to and made part of such Constitution; that by section 25 of said schedule it was provided that the Constitution, except as otherwise provided, should go into effect on July 10, 1902, at noon, and by section 24 thereof it was provided that the Governor of the commonwealth should issue his proclamation announcing that such revised and amended Constitution had been ordained by the people of Virginia assembled in convention, through their representatives, as the Constitution for the government of the people of that state, and that it would go into effect as such, subject to the provisions of the schedule, on July 10, 1902, at noon, and also that he should call upon all the people of Virginia to render their true and loyal support to the same as the organic law of the commonwealth; that the Governor of Virginia did, on the 27th day of June, 1902, in pursuance of that provision, issue his proclamation in the form and to the effect required by said section 24; that provision was made that the General Assembly should convene on July 15, 1902, which it did, and that all of its members and officers, pursuant to the requirements of said schedule, took and subscribed an oath to support the Constitution of the United States, and the said revised and amended Constitution of the state of Virginia; that said oath was on that day, or subsequently, taken and subscribed by all of the members of the General Assembly except E. P. McLean, a member of the House of Delegates, who refused to take such oath, and thereupon said House declared his seat vacant, and a writ of election issued under which his successor was elected, who did take such oath; that the Governor and all other executive officers of the commonwealth of Virginia, and all judges of the courts of record of that state, did severally take and subscribe such oath; that said revised and amended Constitution, schedule, and ordinance have been recognized by the General Assembly in acts which have been passed from time to time since July 15, 1902; that on July 15, 1902, the General Assembly adopted a joint resolution that the said revised and amended Constitution, so ordained by the convention, be duly recognized as the Constitution of Virginia; that article 2 of said revised and amended Constitution relates to the elective franchise and qualification for office, which defendants fully set forth in their plea; that the ordinance to provide for the registration of

voters under said revised and amended Constitution, annexed to it, contained certain provisions and requirements, which were also fully set forth, and that in it boards of registration were appointed for the several magisterial districts and wards of the counties and cities of Virginia, including Tanner's Creek magisterial district, in the county of Norfolk, in which Huntersville precinct, referred to in plaintiff's declaration, is located, and that the persons appointed for such district accepted the appointments, and duly qualified as registrars, and did act under and in accordance with the ordinance of registration, and the act of the General Assembly of Virginia approved July 28, 1902, as the board for the registration of voters for said precinct, in the month of September, 1902, and prior to the 15th day of October, 1902, and did open books of registration for the purpose of registering all persons who should apply who were entitled to register under said revised and amended Constitution prior to January 1, 1904, and that they did in the manner and form required by the ordinance and statute make up, sign, and certify on oath books of such registration in duplicate for said precinct, and caused one set of the same to be forwarded to the clerk of the county court of Norfolk county, and did retain in its own custody the other copy a reasonable time before the election held on November 4, 1902, and did in due time deliver such books to the judges appointed for said Huntersville precinct, to be used by them in conducting said election; that said board did in the manner and form required by section 19 of the revised and amended Constitution, and by the act so approved July 28, 1902, make a roll containing the names of the persons so registered in and for the Huntersville precinct, which roll was sworn to and certified by said board of registrars, and forwarded to and filed for record in the clerk's office of the circuit court of Norfolk county; that the name of the plaintiff had been entered on the registration book for Huntersville precinct, which was made up under the statute of the state of Virginia in force prior to the 10th day of July, 1902, but that said registration books had not been furnished to defendants as judges of the election so held at such precinct, and were not in the hands of the judges of election on the 4th day of November, 1902, when the election was held, and defendants did not know on said election day that plaintiff's name had been entered on said books; that the registration books made up under the Constitution and ordinance of registration which took effect July 10, 1902, and said act of assembly, were the only books of registration that were in the hands of defendants as judges of election at the election held on November 4, 1902; that the plaintiff's name was not on either of the registration books, or on said roll, so made under the Constitution, ordinance, and statute mentioned; that the plaintiff was assessed on the land books of said county of Norfolk for the year 1901 with real estate of the assessed value of $750, on which taxes amounting to more than $1 had been assessed and had been paid to the state by the plaintiff for the year 1901, and plaintiff at the time of such election was the owner of such real estate, and that as required by the ordinance of registration and said act of assembly the treasurer of Norfolk county had furnished to the board of registrars of Tanner's

Creek district a certified list containing the names of all persons within that district who for the year 1901 had paid as much as $1 in state taxes on property owned by and assessed against them, and that such list contained the name of the plaintiff and was in the hands of the board of registrars at the time when they had made the registration of the lawful voters of Huntersville precinct, prior to such election, and that plaintiff was not disqualified from voting under article 2 of the Constitution of Virginia which took effect on July 10, 1902, if he had been duly registered under it, but was entitled by the express terms of that Constitution and of the ordinance to be registered as a voter, and to be placed on the registration books made up thereunder and under the act of July 28, 1902; that the name of the plaintiff was not on said registration books for that precinct, either for white voters or for colored voters, nor was it on the roll made up under said Constitution, ordinance, and act, which books were delivered to the judges of election to be used in conducting the election held on November 4, 1902, which constituted the only lawful registration books which could be used by the judges of election in conducting that election, and were the only registration books in defendants' hands on that election day; that, when plaintiff presented himself and offered to vote at Huntersville precinct at said election, defendants rejected his vote and refused his application that he be allowed to cast the same, because his name was not entered upon the last-mentioned registration books, and in so acting defendants obeyed the mandate of the act of assembly in such case made and provided; that lawfully and in good faith defendants refused to permit the plaintiff to vote at said election.

To this special plea the plaintiff filed a demurrer, assigning in substance for cause the following:

First. That the plea admits that the General Assembly of Virginia did by an act approved February 16, 1901 (Laws 1901, Ex. Sess. p. 262, c. 243), provide for the selection of delegates to the constitutional convention referred to therein, for the convening of the delegates thereto, the organization of the convention, and for submitting the revised and amended Constitution to be prepared by that convention to the people of the state of Virginia for ratification or rejection.

Second. That while it appears by the plea that delegates were elected under said act, and that they convened at Richmond, Va., on June 12, 1901, at the Capitol, it nowhere appears in said plea that the delegates did organize the convention by taking and subscribing the oath required by article 3, § 5, of the Constitution of Virginia, before entering upon the discharge of their functions as officers of that state, and that in fact said convention was not lawfully organized, because none of the members thereof took and subscribed that oath, and that therefore, the members having failed to take and subscribe the oath, all the proceedings of the convention were null, void, and of no effect, and hence said plea is bad in law.

Third. That said plea is not sufficient in law, for the reason that it is not true as matter of law, as is alleged in the plea, that so much of said act as provided for the election of delegates to the convention and the assembling of the same is constitutional and valid, while that

part of said act that undertook to restrict the power of the convention to proposing a new Constitution, and requiring the same to be submitted to the qualified voters of the commonwealth for ratification or rejection, was unconstitutional and invalid, but, to the contrary, the law is that each, all, and every provision of said act was constitutional and valid; that the provisions of said act required that if the convention completed its work before October 5, 1901, the Constitution framed by it should be submitted to the qualified voters of the commonwealth as a whole, or by separate articles or sections, as the convention might determine, for ratification or rejection, at the general election to be held November 5, 1901, and that if the work of the convention was not finished before October 5, 1901, it should remain for the next General Assembly to enact such measures as it should deem proper for submitting said Constitution to the people of the state for ratification or rejection; and plaintiff is advised that the convention, even if it was a lawfully organized body, which plaintiff does not admit, but denies, had no lawful authority to adopt any revised or amended Constitution for the commonwealth of Virginia, or any schedule and ordinance of registration as set forth in said plea, but that the powers of the convention were limited by said act to framing a Constitution to be submitted to the qualified voters of the commonwealth as a whole, or by separate articles or sections, for ratification or rejection at the general election to be held November 5, 1901, or, if the work of the convention was not finished before October 5, 1901, it should remain for the next General Assembly to enact such measures as it should deem proper for submitting said Constitution to the people of the state for ratification or rejection. Hence plaintiff insists that the action of the convention in proceeding to frame and adopt a revised and amended Constitution, and a schedule and ordinance of registration appended to it, as well as the attempt made by said convention to provide that the Constitution should go into effect on July 10, 1902, at noon, were and are ultra vires, null, void, and of no effect.

Fourth. That as it does not appear in said plea that the convention was lawfully organized, by the members thereof taking and subscribing the oath required by article 3, § 5, of the Constitution of Virginia, before entering upon the discharge of their functions as members of said convention, and does not appear by the act of assembly set forth in the plea that the convention, whether it was properly organized or not, had no power to frame and adopt a revised and amended Constitution for the Commonwealth of Virginia, and the schedule and ordinance of registration appended thereto, the proceedings of the convention were ultra vires, null, void, and of no effect whatever, and all the other and subsequent proceedings mentioned in said plea based upon the alleged action of the convention were likewise null, void, and of no effect; that is to say, the requirement of section 25 of said schedule that the Constitution, except as otherwise provided therein, should go into effect July 10, 1902, at noon, was null, void, and of no effect; that the provision of section 24 of said schedule that the Governor of the commonwealth should issue his proclamation announcing that said revised and amended Constitution had been ordained by the people of

Virginia assembled in convention, through their representatives, as the Constitution for the government of the people of the state, and would go into effect as such, subject to the provisions of the schedule, on July 10, 1902, at noon, was null, void, and of no effect; that the proclamation of the Governor of the commonwealth of Virginia, dated the 27th day of June, 1902, made pursuant to the provisions of section 24 of the schedule, was null, void, and of no effect; that the provision made by the convention that the General Assembly should be convened on July 15, 1902, and that all its members and officers should take and subscribe an oath to support the Constitution of the United States and said revised and amended Constitution of the state of Virginia, was ultra vires, null, void, and of no effect, and that the action of said General Assembly pursuant to said last-mentioned requirement was also null, void, and of no effect; that the action of the Governor and of the other executive officers of the commonwealth of Virginia, and of all the judges of the courts of record, in taking and subscribing the said oath in pursuance of section 22 of the schedule was null, void, and of no effect; that the recognition by the General Assembly of the revised and amended Constitution, and of the schedule and ordinance of registration, were null, void, and of no effect, as was also the joint resolution of July 15, 1902, adopted by both Houses of the Virginia Legislature; and that the Constitution as ordained by said convention and recognized by the General Assembly as the Constitution of the state of Virginia was null, void, and of no effect.

Fifth. That article 2 of said Constitution is null, void, and of no effect.

Sixth. That the ordinance providing for the registration of voters prior to the year 1904, annexed to and made part of said Constitution, is null, void, and of no effect.

Seventh. That the act of said convention in appointing registrars for the several magisterial districts and wards of the counties and cities of Virginia, and especially for Tanner's Creek district, in the county of Norfolk, was ultra vires, null, void, and of no effect, and that the act of the persons appointed for said district in accepting the appointment as such registrars, and in qualifying as such, was illegal, null, and void, as was also the action of such registrars under the alleged ordinance of registration and under the act approved July 28, 1902.

Eighth. That the action of the board of registrars in opening books of registration for the purpose of registering all persons who should apply, and in making up, signing, and certifying on oath books of registration for said Huntersville precinct, was illegal, null, and void.

Ninth. That the action of said board in making up a roll containing the names of persons registered in and for said Huntersville precinct, and in forwarding and filing it, was illegal, null, and void, and that all the acts and doings of said board relating to plaintiff's right to vote were nullities.

Tenth. That plaintiff, under the laws existing and in force prior to July 10, 1902, was a duly registered voter at said Huntersville precinct, as shown by said plea.

Eleventh. That the defendants were lawfully chosen judges of election at Huntersville election precinct prior to July 10, 1902, and were not appointed by said convention or by any alleged officer under any authority conferred by it, and, as is shown by the plea, they knew that plaintiff was a duly registered voter on the registration books for said precinct, 'made up under the statutes of the state of Virginia in force prior to July 10, 1902; that prior to November 4, 1902, defendants as judges of election at said precinct used as their guide to the qualification of voters the registration books made up under and in accordance with the law of Virginia in force prior to the 10th day of July, 1902, under which defendants had theretofore allowed the persons whose names appeared thereon to exercise the right of suffrage at that precinct, and that it appears by the plea that the defendants on the 4th day of November, 1902, voluntarily and without compulsion abandoned the lawful registration books for said Huntersville precinct, and accepted in lieu thereof the unlawful and void registration books made up under the unlawful Constitution and ordinance which took effect as alleged on July 10, 1902; that in so doing defendants assumed all risk that said newly made up registration books might not be the lawful registration books, and became liable for their action to plaintiff if such books should be unlawful; and plaintiff avers that said special plea is not sufficient in law, because it does not appear by anything therein averred that said newly made up registration books were, or at any time became, the lawful registration books at Huntersville precinct, but that, on the contrary, it does not appear from matters set forth in said plea that the registration books which were made up under the statutes of the state of Virginia in force prior to July 10, 1902, were the lawful registration books for that precinct, that plaintiff's name was upon said lawful registration books, and that defendants, being the judges of said precinct, were bound by law to have said lawful registration books in their possession on the day mentioned, to refer to same, and to permit the plaintiff to vote when he applied to do so, but that, instead of having such lawful registration books in their possession, with plaintiff's name thereon, defendants voluntarily on the day and year mentioned, while acting as judges of election at that precinct, abandoned the lawful registration books and accepted other and unlawful registration books on which plaintiff's name did not appear, and used the same at the election at that precinct on the day and at the time mentioned, and, being in possession of such unlawful registration books, made them the guide of their action at said election, and unlawfully excluded the plaintiff from his right to vote at that precinct, because his name was not on the unlawful books, whereas it was the duty of defendants as judges of said election to continue as they had theretofore done to use the lawful registration books for Huntersville precinct, on which plaintiff's name appeared as a registered voter.

To this demurrer by the plaintiff to the defendants' special plea the latter filed their joinder.

The demurrer to the declaration is without merit. The plaintiff alleges that under the Constitution and laws of the United States and

of the state of Virginia he was in all respects entitled and qualified to cast his vote for a Representative in the Congress of the United States, at the election held for members of Congress, on Tuesday, November 4, 1902. The right to vote for a member of Congress is not derived solely from the Constitution and laws of the state, but it has its foundation in the Constitution of the United States. This court has jurisdiction of any action under the Constitution, laws, or treaties of the United States, in which the matter in dispute exceeds the sum or value of $2,000, and it is apparent from the declaration that this suit is of that character. The damages are laid at $5,000. The amount of the recovery is for a jury to say. This court has no right to hold that the amount in controversy is not sufficient to support its jurisdiction. Giles v. Harris, 189 U. S. 475, 23 Sup. Ct. 639, 47 L. Ed. 909; Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84; Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274; Swafford v. Templeton, 185 U. S. 487, 22 Sup. Ct. 783, 46 L. Ed. 1005; Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; North American Transportation & Trading Co. v. Morrison, 178 U. S. 262, 20 Sup. Ct. 869, 44 L. Ed. 1061.

The plaintiff alleges that he is a citizen of the United States, and a citizen and resident of the state of Virginia, subject to no disqualification whatever, but possessing all the qualifications of a voter entitled to cast his vote for a Representative in the Congress of the United States, under the Constitution and laws of the United States and of the state of Virginia. The insistence in the demurrer that the declaration is defective because it does not allege that the plaintiff was entitled to register and vote in accordance with the provisions of the Constitution and ordinance of registration of Virginia which took effect on July 10, 1902, and of the act of the General Assembly of Virginia which took effect on July 28, 1902, cannot be sustained, as the complaint is sufficiently comprehensive in alleging all the requirements necessary to show that the plaintiff was, under the Constitutions and laws then in force, entitled to case his vote at the election referred to. That the plaintiff would have likely failed in sustaining his said allegations is not a matter to be considered on demurrer. In reaching this conclusion I have not considered the bill of particulars as part of the declaration, as was suggested by counsel it would at least be proper to do.

The claim that, as the acts of the defendants are not alleged to have been willful or malicious, the damages must therefore necessarily be colorable only, and merely nominal, is without force in cases of this character. It was not necessary that the plaintiff should allege in his declaration that the defendants in rejecting his vote acted either maliciously or intentionally wrongful. The statute under which the plaintiff proceeded does not so require, and the rules of pleading applicable to common-law suits, to which the defendants refer in the effort to sustain their demurrer, do not apply to this action. The Supreme Court in Giles v. Harris, supra, says:

"We have recognized, too, that the deprivation of a man's political and social rights properly may be alleged to involve damage to that amount capable of

estimation in money" [the words "that amount" referring to the sum of $2,-000 necessary to give this court jurisdiction].

Defendants' demurrer to plaintiff's declaration will be overruled.

We come now to consider the defendants' special plea and the plaintiff's demurrer thereto. Did the matters alleged in the plea justify the defendants in refusing the plaintiff's vote, when offered under the circumstances set forth in his declaration? For all purposes relating to the demurrer they are conceded to be true. If they constitute a defense, the demurrer must be overruled.

In support of the demurrer, counsel for plaintiff argues with ability and force the invalidity of the registration ordinance, as also of the Constitution of Virginia that went into effect, as claimed by defendants, on the 10th day of July, 1902. The plea asserts and the demurrer admits: That the General Assembly of Virginia provided for the submission to the qualified voters of Virginia of the question: "Shall there be a convention to revise the Constitution and amend the same?" That the act provided the method of holding the election and of ascertaining the result thereof. That the election was held, and that a majority of the qualified voters decided in favor of a convention for the purpose mentioned. That the General Assembly passed an act providing for the selection of delegates to the constitutional convention, for the convening of the delegates, for the organization of the convention, and for submitting the revised and amended Constitution to the people of the state of Virginia for ratification or rejection. That such act provided for the election of delegates on the fourth Thursday of May, 1901, apportioned the delegates among the different counties of the state, and required that those elected as such should meet at the Capitol in the city of Richmond, on Wednesday, June 12, 1901, and that the convention should organize and consider a proposed and new Constitution, which should be submitted to the qualified voters of the state of Virginia for ratification or rejection. That the election for delegates was duly held, and that the delegates assembled at the time and place mentioned in the statute.

The plea alleges that the members of the convention proceeded to frame and adopt a revised Constitution, and the demurrer insists that the plea is bad in law, because it nowhere appears by it that the delegates did organize the convention as required by the law under which they assembled. In support of the demurrer it is insisted that, before the acts of the delegates elected to the convention could be made binding on the parties to this suit, such delegates should not only meet as provided by law, but should also, before entering upon the discharge of their duties, take and subscribe the oath as provided for in the Constitution of Virginia in force when the delegates convened. The oath referred to, found in section 5 of article 3 of that Constitution, reads as follows:

"All persons, before entering upon the discharge of any function as officers of this state, must take and subscribe the following oath or affirmation: 'I do solemnly swear (or affirm) that I will support and maintain the Constitution and laws of the United States, and the Constitution and laws of the state of Virginia; that I recognize and accept the civil and political equality of all

men before the law, and that I will faithfully perform the duty of ———— to the best of my ability; so help me God.' "

It is conceded that this oath was not taken by the delegates constituting the convention, they concluding that they were not officers of the state in the sense that those words were used in said Constitution. The insistence of the plaintiff's counsel is that by refusing to take that oath the convention rendered all of its proceedings null and void. It is also claimed that the registration ordinance passed by the convention, set up and relied on by the defendants in their special plea, and attached to and promulgated with the Constitution and schedules, was a nullity; the Constitution not having the power to so legislate, as the right to so enact was vested only in the General Assembly of Virginia.

Another point made by plaintiff in support of the demurrer involves questions of supreme importance in our system of government, and is worthy of the serious consideration of those whose duty it is to determine them. It denies the right of the convention to disregard the limitations placed upon its powers, found in the conditions imposed by the Congress of the United States (Act Jan. 26, 1870, c. 10, 16 Stat. 62) and by the Constitution of the state of Virginia under the provisions of which the convention assembled.

The special plea also insists that so much of the act of the General Assembly of Virginia, by virtue of which the convention convened, as provided for the election and assembling of delegates to the convention is constitutional, but that the part of said act which undertook to restrict the power of the convention to proposing a new Constitution, and requiring the same to be submitted to the qualified voters of the commonwealth for ratification or rejection is unconstitutional and invalid. The demurrer to the plea puts that averment in issue, and insists that the convention had no authority to act in any way, or to consider any matter, except as it was authorized to do by the act convening it.

It is not the province of the courts to make either Constitutions or laws; but after the sovereign people have declared the one, and their representatives have enacted the other, then it is the duty of the courts to determine the rights of the people between themselves under such Constitutions and by such laws. Under our system of government the people of the states may amend their respective Constitutions, or make and declare new Constitutions, as they have provided for, whenever they think their common welfare will be promoted thereby, due regard being had for the provisions of the Constitution of the United States; and whether or not the restrictions and the requirements of that Constitution have been duly observed in the Constitutions of the states, and whether or not the states admitted into the Union have observed the demands of their enabling acts, are political questions, to be determined by the executive and legislative branches of the federal government. This policy has been adhered to since the adoption of the Constitution of the United States. The reason for it is obvious, not, as has been suggested, because the courts are controlled by rigid rules of construction and by precedents, but because they must not

165 F.—35

invade the dominion nor usurp the duties of the other departments of the government, by which questions relating to public policy, governmental necessities, and political rights are considered when laws are passed and proclamations are issued. Luther v. Borden et al., 7 How. 1, 12 L. Ed. 581; Texas v. White, 7 Wall. 730, 19 L. Ed. 227; Jones v. U. S. 137 U. S. 202, 11 Sup. Ct. 80, 34 L. Ed. 691.

This court will not decree concerning the policy of public measures, nor will it pass on the expediency of the action of the legislative and executive departments of the government, but will construe and apply the enactments of the one and the acts of the other after those departments have discharged the duties assigned them. It will not hesitate to decide all judicial questions properly before it, but it will decline to enter the political domain, and will refuse to attempt by its decree to dispose of matters confided to the official action of others.

That the Constitution of the United States and the laws of the Congress passed in conformity thereto are supreme throughout the nation, and that it is the duty of all judges to so decree, anything in the Constitution or laws of any of the states to the contrary notwithstanding, is conceded by all whose opinions are worthy of consideration. Will it not also be universally conceded that, before it can be decided by the courts whether or not the Constitution of any state has incorporated therein anything contrary to the Constitution of the United States, in cases where unfortunately there is a controversy as to which of two instruments is the valid Constitution of a state, it must first be determined which is the Constitution of that state, to which the people thereof owe their allegiance? It is concerning this ascertainment— whose duty it is to decide it—that I find myself compelled to differ with the insistence of the plaintiff as it was presented in the oral argument by the learned and distinguished attorney who so ably and eloquently represented him.

Whether or not the people of the state of Virginia have duly adopted the Constitution in controversy in this case is a political question, not to be disposed of by this court, but by the legislative and executive departments of the government of that state. Those departments having recognized and promulgated that Constitution, having declared it valid and in force, it consequently is the fundamental law of Virginia, so to remain until it is changed by the people of that state, or overthrown, not by the courts, but by revolution. The Supreme Court of Appeals of Virginia, in Taylor v. Commonwealth, 101 Va. 829, 831, 44 S. E. 754, 755, says:

"The Constitution of 1902 was ordained and proclaimed by a convention duly called by direct vote of the people of the state to revise and amend the Constitution of 1869. The result of the work of that convention has been recognized, accepted, and acted upon as the only valid Constitution of the state by the Governor in swearing fidelity to it and proclaiming it, as directed thereby; by the Legislature in its formal official act adopting a joint resolution, July 15, 1902, recognizing the Constitution ordained by the convention which assembled in the city of Richmond on the 12th day of June, 1901, as the Constitution of Virginia; by the individual oaths of its members to support it, and by its having been engaged for nearly a year in legislating under it and putting its provisions into operation; by the judiciary in taking the oath prescribed thereby to support it, and by enforcing its provisions; and by the people in their primary capacity by peacefully accepting it and acquiescing in it, by

registering as voters under it to the extent of thousands throughout the state. and by voting, under its provisions, at a general election for their representatives in the Congress of the United States."

In that case it was contended that the convention of 1901–02, was without power to promulgate the Constitution it ordained, and it is well to note that the Supreme Court was impelled to the conclusion it announced without deciding directly that specific question. In effect that court held that, as the question presented by the record, relating to the validity of the Constitution, was in character political, and as that instrument had been acknowledged by the state government—by the legislative, executive, and judicial departments thereof—and also by the people, it thereby became the fundamental law of the state, and that consequently it was the duty of the court to adjudge that the citizens of Virginia did owe obedience and allegiance to it.

It does not follow from the conclusion I have reached that this Constitution may not contain certain provisions in conflict with the requirements of the Constitution of the United States and of the laws made in pursuance thereof, and, if that be so, then in proper proceedings it will be so adjudged; the result being that those provisions in conflict with the supreme law will be null and void, and not the Constitution in its entirety. The claim of the plaintiff in this action is that said Constitution of the state of Virginia is null and void, and not that it is in some particulars in conflict with the Constitution of the United States and the laws made thereunder.

Whether or not this Constitution of Virginia is consistent with the requirements of the federal Constitution, relating to a republican form of government, is a question to be determined by the legislative and executive departments of the government of the United States. In regard to such matters the courts will not take the initiative, but will await the action of the departments mentioned, and when they have acted will be bound by the conclusion they have reached. If such action has not been taken by those departments of the government, the presumption is that the necessity for it did not exist, and the courts will not infer that they have either refused or neglected to promptly and efficiently discharge the duties imposed upon them.

The plaintiff's demurrer to the defendants' special plea will be overruled.