### CAUBLE v. CENTRAL VERMONT RY. CO.

(District Court, S. D. New York. September 14, 1914.)

DAMAGES (§ 173*)—MEASURE OF DAMAGES FOR INJURY TO PERSON—EVIDENCE—LOSS OF EARNINGS.

Plaintiff, who was a teacher, was injured in a collision on defendant's railroad, and brought an action for damages. *Held*, that testimony that she intended to take a further educational course and secure an additional degree which would have enabled her to earn a higher salary, but was prevented by her injury was incompetent and its admission was prejudicial to defendant as affording a basis which was more or less conjectural and uncertain for the estimation of damages by the jury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 490–492, 501; Dec. Dig. § 173.*]

At Law. Action by Laura A. Cauble against the Central Vermont Railway Company. On motion to set aside the verdict of the jury for $10,000 damages, and for a new trial. Motion granted.

Bassett, Thompson & Gilpatrick, of New York City, for plaintiff.
Martin S. Lynch, of New York City, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

RAY, District Judge. I am convinced that the motion for a new trial must be granted and the verdict set aside.

The collision of engines was not denied; that plaintiff was at least shaken up could not be questioned, but the nature and extent of her injuries were sharply contested. The plaintiff was a teacher and on her way to a new field to secure or with a view to employment of the same kind in that field. After the collision she was transferred to another train very near the place of the accident and proceeded on her journey to her destination where she was entertained for some days, took rides and walks, etc. She had been a hard student, was a little upwards of 40 years of age, and a lady of studious habits and more than ordinary intelligence. She had in mind the taking of instruction in other lines so as to engage in broader intellectual fields, including a course of study, graduation, and the taking of a degree. All this was unknown to the defendant railroad company on whose train she was a passenger and could not have been within the contemplation of the parties, and, if by the accident and injury, she was prevented from pursuing this contemplated course of study, securing graduation, a degree, and larger wages because thereof, all of which was more or less conjectural and uncertain, it was not a proper matter to be considered by the jury in estimating and fixing damages. North American, etc., Co. v. Morrison, 178 U. S. 262, 267, 20 Sup. Ct. 869, 44 L. Ed. 1061.

The evidence on the part of the plaintiff tended to show that by reason of the injury plaintiff was disabled to pursue any studies, etc., and hence allowing her to testify what she purposed or intended to do in the lines of study, taking a regular course, etc., was prejudicial and allowed the jury to conjecture and surmise that the plaintiff, by reason of defendant's negligence, has lost and will lose higher wages in a broader field to which she would have attained but for the alleged negligence and consequent injury.

This is what transpired at the trial:

"Q. What were your arrangements with Columbia University for that extra course? A. I was given a fellowship of $50 a month and my tuition for a year. I was to make some special investigations on some sociological lines and prepare myself to direct just such work in training schools. Q. If you had completed your year of study in Columbia University, beginning in September, 1912, would that have led to another degree?

"Mr. Lynch: That is objected to as immaterial.

"The Court: That gets into the realms of speculation, where it is not permissible.

"Mr. Thompson: I want to prove an agreement with the Carnegie Institute that if she took that degree she had an offer of that department with an increase of salary. This accident prevented her taking that degree, and, not having the degree she could not accept the position. Her loss of employment at an increased salary is directly due to this accident.

"The Court: I think you had better leave this until Monday. If you can give me any case where it is decided that the testimony is competent—

"Mr. Thompson: I will take an exception to that, your honor.

"Q. What courses did you intend to pursue at Columbia University during the year beginning the fall of 1912?

"Mr. Lynch: That is objected to as incompetent and immaterial.

"The Court: She may answer, but it is not necessary to go into details. (Exception by defendant.)

"By the Court: Q. Did you or did you not intend to take advance courses in your studies? A. I did. (Exception by defendant.)

"By Mr. Thompson: Q. What were those courses in? (Same objection, ruling, and exception.) A. Courses in sociology, which made a study of the social customs of the different races who are immigrating to America—their social customs. By that I mean their family relations, their educational, institutional, and their practical relations; the things which we need in trying to educate the children of foreigners, while they are still living in the homes of parents who do not understand what we do in our American schools. That was one phase of the work. Another phase of the work was a study of the types of institutions in America which cared for different defective, dependent, helpless, or unsupported children. I was working in Pittsburgh, where we had all those problems constantly thrown at us. Q. How many hours a day of required work was there in the course that you were to pursue that year? A. One of the three courses—one course at the university required two hours a week. One course at the university required four hours a week. Two courses, I think, required four hours a week. Q. Four hours each, a week? A. Four hours each a week. That was six hours, all told, at the university. The rest of the work I had was in the same class at the School of Philanthropy in the Charities Building, 105 East Twenty-Second street. There they are dealing with all these social problems first hand. And I would go to those men and see how they approached it. I might differ with them in opinion as to whether their method of approach was good or otherwise, but I wanted to know what they did. Q. In order to prepare yourself for this work, was it necessary for you to read and study in the library? A. Yes. Q. Consult books there? A. Yes. Q. Were you able to go to the library as much as your work required you to? A. I could not consult—— (Objected to as incompetent.)

"The Court: After the accident, you mean she was not able to go there to the library as much as she did formerly, is that it?

"Mr. Thompson: No. She had not gone there formerly, except when she was a student there before. But in connection with this work she was obliged to go to the library and prepare herself. And I asked her if she was able to go there as often, as frequently, for a long time, as her studies required her to.

"The Court: It may be she would not be able to do so anyhow, so you are going into speculation. She may describe any of the facts. But when you put it in, 'as much as her studies required,' that is surmise and guess. I will sustain the objection and give you an exception. (Exception by plaintiff.)"

I do not think this error was cured or overcome by the charge. The court was requested to charge:

"In fixing the amount of damages the jury may consider the earning capacity of plaintiff at the time of the accident and also any increased earning capacity that plaintiff might reasonably be expected to have acquired but for the accident and consequent injury."

The statement by plaintiff's counsel as to what he wanted to prove, followed as it was by the evidence quoted, admitted under objection and exception, and other evidence that she could not do what she intended to do, must, or probably did, leave the jury under the impression that the plaintiff could recover damages based on what her earning power would have been had she not received the injury and had pursued the studies contemplated, etc. The jury was not told to disregard the testimony. I do not see how it was competent, and it seems to me that it was harmful and prejudicial. I would not set aside the verdict because the damages awarded are excessive, inasmuch as, if the plaintiff's nervous troubles and nervous condition were wholly the result of injuries received in that accident and the defendant was negligent (which was not questioned), the damages were not

excessive. However, the defendant claimed that there are several causes for such nervous troubles and conditions as affected the plaintiff, and that hard study, worry, etc., are producing causes, and that plaintiff's condition was the result, not of the accident and injury, if any, but of fright, worry, and mainly her previous life of hard and tiresome mental work. All reference to what the plaintiff intended to do, the studies she intended to pursue, and her prospects of greater compensation if they were followed to a successful end should have been ruled out.

In response to the above quoted request the court in assenting thereto also said:

"That is not only earnings for the past, but earnings in the future, whatever you say under the evidence that would have been. But you cannot give speculative damages, gentlemen, nor surmise, nor guess that she might have got the degree, and if she had, she might have earned more; you cannot surmise or guess damages."

However, this did not cure the error, as the evidence remained in the case.

It is urged that it was error to permit a physician called by the defendant to answer the question, in substance, "If a person had to work or starve, what would you recommend as a proper course of treatment?" referring to the nervous complaint or condition in question. Treatment, etc., had been gone into by defendant, and the suggestion had been made that rest would cure the plaintiff. The court had expressly ruled out evidence as to the financial condition of the plaintiff, but the question was somewhat objectionable as raising an inference, or permitting an inference, that the plaintiff was poor and financially unable to rest, and that therefore she could not take proper treatment and was entitled to more damages than if she had taken proper treatment. The objection should have been sustained.

There will be an order setting aside the verdict and granting a new trial.