## COHN v. CITIES SERVICE CO.
### No. 63.

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1930.

688

Harold R. Seamans and Joseph & Zeamans, all of New York City, for appellant.

Frueauff, Robinson & Sloan, of New York City (John W. Davis and Edgar G. Crossman, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

On October 10, 1929, the defendant, a Delaware company, made to those common shareholders who should be of record on its books on November 7th, an offer of the "right" to subscribe on or before November 30th for one share of new stock for every 10 shares held by them, at $45 a share; the usual "warrants" to be issued on November 7th.

The defendant had issued a series of debenture bonds, to each of which was attached a "purchase warrant," authorizing the holder upon 30 days' notice to subscribe for 40 shares of common stock at $31.50 each. By advertisement in the press it advised the holders of these bonds that they might subscribe under the "purchase warrants" without giving the required notice, and that they would thereupon become entitled to the privilege offered the common shareholders. "Rights" were at once sold on the New York Curb, "when, as and if issued," since the defendant's shares were then selling at $65 and there was a value in the privilege of subscribing at $45. On October 30th, the defendant publicly withdrew its offer to issue the new shares.

Cohn, the plaintiff, a citizen of New York, was the owner of 300 shares of the defendant's stock on October 10th. On November 7th he filed his bill in the District Court on behalf of himself and any other shareholders who might join and share the expense of the suit, asserting that the defendant's offer was not revocable. The bill depended for jurisdiction upon diversity of citizenship, and alleged generally that the subject-matter in dispute exceeded $3,000. On the other hand, it alleged that, although in October the defendant's shares had sold for more than $65, and the "rights" for between $1.50 and $2.25, they had sold as low as $22 during the week beginning October 28th, for less than $45 on October 31st, and that nobody could say "with definite knowledge whether or not this stock will sell at higher than $45 a share, the subscription price, before November 30, 1929." It prayed a declaration that the withdrawal of the offer of October 10th was unlawful, and that the defendant be directed to issue the promised warrants, which, so far as appears, the plaintiff had not sold.

On November 8th, one Bertha Lann applied to intervene in the suit as party plaintiff. Her petition alleged that she was a citizen of New York, and had bought four of the defendant's bonds in reliance upon the defendant's advertisement, had taken up the 160 shares of stock, to which she was entitled, at $31.50, and on October 14th had sold her "rights" under these at $2.25 each. She also prayed a delivery of the warrants to perform her contract. On November 18th, Charles E. Quincey & Co., Arbitrage Corporation, a Delaware company, also applied to intervene as plaintiff. Its petition was like Bertha Lann's, except that it had bought 108 bonds, and had become entitled to 4,320

"rights," which it had sold at $2.12½ on October 17th. It alleged, furthermore, that on November 18th, the defendant's shares were selling at "considerably less than $31.50 a share." The judge decided the case upon the merits, and dismissed the bill. The plaintiffs appealed.

Cohn's bill did not give jurisdiction to the District Court, and standing alone, must have been dismissed, because the subject-matter in dispute was not of the value of $3,000. It is true that it contained a general allegation to the contrary, but, when a bill carries its own contradiction on its face, that is not conclusive. Vance v. Vandercook, etc., Co., 170 U. S. 468, 18 S. Ct. 645, 42 L. Ed. 1111; North American Co. v. Morrison, 178 U. S. 262, 20 S. Ct. 869, 44 L. Ed. 1061; Marcus Brown Holding Co. v. Pollak (D. C.) 272 F. 137; Robinson v. West Virginia Loan Co. (C. C.) 90 F. 770; New York Life Ins. Co. v. Johnson, 255 F. 958 (C. C. A. 8); Maryland Casualty Co. v. Price, 231 F. 397, Ann. Cas. 1917B, 50 (C. C. A. 4). In the case at bar, it is apparent that the value of the "rights" could not be greater than one-tenth the "spread" between the value of the shares and $45. Strictly it would not be so much, because, if there were such a "spread," the new shares were presumably in part a declaration of existing profits. While the bill does not indeed allege what was the value of the "rights" on the day when it was filed, it is apparent that at that time the shares were not worth $45. The allegation that nobody could say that they might not be worth so much in the future, coupled with the values given between October 31st and the date of the filing of the bill, can only mean that the "rights" had no value at the time; and it is the value at the filing of the bill which determines jurisdiction. Mutual Life Ins. Co. v. Rose (D. C.) 294 F. 122. However, it is not necessary to go so far, because in any event the "rights" could not have been worth $3,000, if they were worth anything at all: They were not of that value unless each was worth $10, a preposterous suggestion in the face of what we have quoted, for it presupposed a value of about $145 for the shares.

On the next day Bertha Lann intervened. The value of her claim could not be tacked to Cohn's to give jurisdiction, for each spoke in his several right. Wheless v. St. Louis, 180 U. S. 379, 21 S. Ct. 402, 45 L. Ed. 583; Rogers v. Hennepin County, 239 U. S. 621, 36 S. Ct. 217, 60 L. Ed. 469; Scott v. Frazier, 253 U. S. 243, 40 S. Ct. 503, 64 L. Ed. 883; Lion Bonding Co. v. Karatz, 262 U. S. 77, 85, 86, 43 S. Ct. 480, 67 L. Ed. 871. Standing alone, the amount was even less than Cohn's. She had 160 "rights," which she had sold for $2.25 each. Assuming this to be the value of the subject-matter as to her, unlike Cohn, who had not sold, her claim would make no difference, even if it could be tacked, for it added but $375, and the stock would still have had to be about $130 to give jurisdiction. On the 18th, the Quincey Company intervened; its claim was alone large enough, but it was a Delaware company, like the defendant. Thus, as the case stood on November 18th, the court had no jurisdiction, and the Quincey Company, as plaintiff, could give none, because it was a citizen of the same state as the defendant, and could not itself be grouped as a defendant.

It is quite true that, once jurisdiction has attached, it will not be divested by the intervention of a new party plaintiff, a citizen of the same state as the defendant. Wichita R. & Light Co. v. Public Utilities, 260 U. S. 48, 43 S. Ct. 51, 67 L. Ed. 124; Fraser v. Cole, 214 F. 556 (C. C. A. 7); Lackner v. McKechney, 252 F. 403 (C. C. A. 2); Elder v. Western Mining Co., 280 F. 569 (C. C. A. 8); Vogue Co. v. Vogue Hat Co., 12 F.(2d) 991 (C. C. A. 6). But the situation at bar is quite different; the court had never had jurisdiction of the cause, and could get none except by virtue of the Quincey Company's claim. While Cohn and Lann might join, their claims could be as little tacked in respect of their citizenship, as by adding their amount. There was, therefore, at no time a claim of adequate amount, pressed by a citizen of another state than the defendant. The bill should have been dismissed for want of jurisdiction, even assuming that it could have been validated by the intervention of a proper plaintiff, a point we do not decide.

Decree reversed; cause remanded, with instructions to dismiss the bill for want of jurisdiction.