O'CONNELL v. REED et al.

(Circuit Court of Appeals, Eighth Circuit. May 15, 1893.)

No. 210.

1. FEDERAL COURTS—FOLLOWING STATE PRACTICE.
The federal courts will conform the practice, pleadings, and forms and modes of proceeding in civil causes in the circuit courts, as near as may be. to the statutes of the states in which they are held, and to the practice of the courts in those states; but it is their right and duty to reject any subordinate provision of the state statutes, and any rule of practice of the state courts, which, in their judgment, will "unwisely incumber the administration of the law, or tend to defeat the ends of justice, in their tribunals."

2. SAME—JURISDICTIONAL AMOUNT—STATE DECISIONS.
Plaintiff sued out an attachment under Code Civil Proc. Kan. § 191, for a debt due, and another, against the same defendant, under section 230, for a debt not due. Both claims grew out of the same running account, and together exceeded $2,000. He brought suit in the United States circuit court for the whole amount. Defendant, having demurred, cited section 83 of the Code, allowing a defendant to demur where causes of action were improperly joined, and section 92, requiring separate petitions for each cause of action where the demurrer was sustained, and a decision of the supreme court of Kansas construing these provisions, and holding that it was a misjoinder to include in one petition a claim due, and one not due; and he asked judgment on his demurrer in this case because neither claim alone was within the jurisdiction of the court. *Held,* that Rev. St. U. S. § 914, which provides that the "practice, pleadings, and forms and modes of proceeding in other than equity and admiralty causes" in the federal courts "shall conform, as near as may be" to those existing in the courts of the states in which they are held, does not require those courts to follow state decisions in matters which affect their jurisdiction, and as the amount in controversy in this case is within the jurisdiction of the court the demurrer will be overruled.

In Error to the Circuit Court of the United States for the District of Kansas. Affirmed.

B. P. Waggener, for plaintiff in error.

W. H. Rossington, (Charles Blood Smith and Everett J. Dallas, on the brief,) for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge. On December 4, 1891, Simon Reed and Thomas Murdoch, the defendants in error and the plaintiffs below, who were citizens of Illinois, brought an action in the circuit court for the district of Kansas against T. J. O'Connell, the plaintiff in error, who was a citizen of Kansas, for $2,239.70, for goods sold and delivered. Their petition contained two counts,— one for $338.71, then due, and the other for $1,900.99, not due. The defendant demurred to the petition on the grounds (1) that the court had no jurisdiction of the defendant, or of the subject of the action; (2) that the plaintiffs had no legal capacity to sue; (3) that several causes of action were improperly united; and (4) that the petition did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and this ruling is the supposed error complained of. Judgment was entered in favor of the plaintiffs, and the defendant brought this writ of error to reverse it.

The only question presented by this record is whether two causes of action,—one for a debt due, and the other for a debt not due,— and both arising out of the same running account for goods sold, were improperly united in this petition. The Code of Civil Procedure of the state of Kansas provides that in a civil action for the recovery of money the plaintiff, at or after the commencement of the action, may have an attachment against the property of the defendant on several grounds, one of which is, when the defendant "has assigned, removed, or disposed of, or is about to dispose of, his property, or a part thereof, with the intent to defraud, hinder, or delay his creditors," (section 190,) and that an order of attachment shall be made by the clerk of the court in which the action is brought, when the proper affidavit is filed, (section 191.) On the day this action was commenced the plaintiffs caused an order of attachment to be issued by the clerk, upon the grounds stated in the quotation marks above, on the debt of $338.71, that was due. The same Code provides that "where a debtor has sold, conveyed, or otherwise disposed of his property, with the fraudulent intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts, or is about to make such sale or conveyance or disposition of his property, with such fraudulent intent, or is about to remove his property, or a material part thereof, with the intent or to the effect of cheating or defrauding his creditors, or of hindering or delaying them in the collection of their debts, a creditor may bring an action on his claim before it is due, and have an attachment against the property of the debtor." (section 230;) that the attachment authorized by section 230 may be granted by the court or judge upon the filing of a proper affi-

davit, (section 231;) that in all such actions an application for an attachment must be made; that the action shall be dismissed if the court or judge refuses to grant it, (section 232;) and that the plaintiff in such an action shall not have judgment on his claim before it is due, but the proceedings upon the attachment may be conducted without delay, (section 235.) On the same day that this action was commenced the plaintiffs filed the proper affidavit, obtained from the judge an order for an attachment, and caused it to issue, on the claim of $1,900.99, that was not due.

The Kansas Code also provides that "the plaintiff may unite several causes of action in the same petition, * * * where they all arise out of either one of the following classes: First, the same transaction, or transactions connected with the same subject of action; second, contracts express or implied, * * *" (section 83;) that the defendant may demur to the petition when it appears on its face that several causes of action are improperly joined, (section 89;) and that, "when a demurrer is sustained on the ground of misjoinder of several causes of action, the court, on motion of the plaintiff, shall allow him, with or without costs, in its discretion, to file several petitions, each including such of said causes of action as might have been joined, and an action shall be docketed for each of said petitions, and the same shall be proceeded in without further service," (section 92.)

In Wurlitzer v. Suppe, 38 Kan. 31, 15 Pac. Rep. 863, (decided in 1887,) the supreme court of Kansas sustained a demurrer to a petition, and held that a count for moneys due and one for moneys not due, under the statutes above referred to, were improperly joined in one petition, on the ground that the claim for moneys not due was not a cause of action, although the statute authorized the claimant to bring and maintain an action upon it. The contention of counsel for the defendant is that this decision is a construction of the statutes of Kansas by the highest judicial tribunal of that state; that the federal courts are bound to follow this decision, by the rule that they will adopt the construction of state statutes announced by the highest judicial tribunal of that state, and by the act of congress conforming the pleadings and practice in the circuit and district courts, in actions at law, to those of the states in which they are established; that the court below should therefore have sustained the demurrer, separated the two counts of the petition into two separate actions, according to the statutes and practice in Kansas, and then, as the amount in dispute in each would thus have become less than the $2,000 required to give jurisdiction to the circuit court, that that court should have dismissed both actions for want of jurisdiction.

By the act of congress of March 3, 1887, and the act of August 13, 1888, for its correction, (24 Stat. 552, c. 373; 25 Stat. 434, c. 866,) jurisdiction was conferred on the circuit courts of the United States in any civil suit in which a controversy arises between citizens of different states, and the amount in dispute exceeds $2,000, exclusive of interest and costs. When this action was commenced the amount in dispute therein was $2,239.70, and the controversy

concerning this amount had arisen between citizens of different states. The circuit court then had jurisdiction of this action. The jurisdiction of that court had been defined and limited by acts of congress, and could neither be restricted nor enlarged by the statutes of a state. Toland v. Sprague, 12 Pet. 300, 328; Cowless v. Mercer Co., 7 Wall. 118; Railway Co. v. Whitton, 13 Wall. 270, 286; Phelps v. Oaks, 117 U. S. 236, 239, 6 Sup. Ct. Rep. 714. If the state of Kansas had enacted a statute that no action for a larger amount than $1,500 should ever be brought in that state, but that a claimant might bring a separate action for each $1,500, or part thereof, that was owing him, such a statute would not have affected the jurisdiction of the circuit court to determine controversies between citizens of different states, involving larger amounts. Are the federal courts bound to follow the decision of a supreme court of a state giving a construction to state statutes, and establishing a practice, which compels the separation of this action, of which the circuit court now has jurisdiction, into two separate actions, of which it will not have jurisdiction?

It may be conceded that it is the settled rule of the federal courts to adopt the construction given by the highest judicial tribunal of a state to its local statutes involving rules of property, and to its state constitution and tax or revenue laws, where that construction violates no provision of the federal constitution, or of the federal laws. All the authorities cited by counsel for the defendant, with the exception of Glenn v. Sumner, 132 U. S. 156, 10 Sup. Ct. Rep. 41, and People's Bank v. Batchelder Egg-Case Co., 4 U. S. App. 603, 609, 2 C. C. A. 126, 51 Fed. Rep. 130, only illustrate this principle. Thus, in Nichols v. Levy, 5 Wall. 433, 444, where the supreme court of Tennessee had construed a statute of that state to embrace certain trusts in real estate, and to exempt the land in dispute from liability to judgment creditors, the supreme court adopted its construction with the remark: "Being a local statute, and involving a rule of real property, we adopt the construction which has been given to it by the highest judicial tribunal of the state." And in Nesmith v. Sheldon, 7 How. 812, where, under a provision of the constitution of Michigan prohibiting its legislature from "passing any act of incorporation, unless with the assent of at least two-thirds of each house," the supreme court of that state had held that two-thirds of each house must sanction and approve each individual charter, the supreme court promptly adopted this construction. These two cases fairly illustrate this class of authorities, and they are far from holding that the federal courts are bound to follow any construction of a statute or any practice established by a state court that would affect the jurisdiction of their courts, or hinder or incumber the administration of the law in any of their tribunals.

The act of congress of June 1, 1872, section 5, (17 Stat. 197, c. 255; Rev. St. § 914,) provides that "the practice, pleadings, and forms and modes of proceeding in other than equity and admiralty causes in the circuit and district courts of the United States shall conform, as near as may be, to the practice, pleadings, and forms

and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding." The purpose of this act was to conform the pleadings, practice, and modes of procedure in the federal courts, in actions at law, to those prevailing in the state courts under the Codes of the various states in which they were established, so that lawyers who were practicing in both the state and federal courts would be relieved of the burden of studying two systems of pleading and practice. Under this act, wherever the pleadings, practice, and modes of procedure in the state courts, as they have been established by the statutes of a state, and the decisions of its highest judicial tribunal, do not impede the administration of the law, or the efficiency of the federal courts, they are, and ought to be, followed in those courts. In other words, in matters where it is important that the rule of practice or procedure in the state and federal courts shall be uniform, but largely immaterial what that rule shall be, the pleadings, practice, and procedure in the federal court must, under this statute, conform to those in vogue in the state courts under the statutes of the state. In passing upon questions of this character the federal courts frequently remark that they are governed by the practice or the statutes or the decisions of the courts of the state in which they are held. The two cases relating to practice and modes of procedure cited by counsel for defendants (Glenn v. Sumner, supra, and People's Bank v. Batchelder Egg-Case Co., supra) are illustrations of this rule. In the former case the only question was whether or not all of the issues were decided in favor of the defendant, under the Code of Civil Procedure of North Carolina, by a general verdict in his favor. In the latter case the question under consideration was the power of the circuit court to allow an amendment to proceedings in attachment,—a power that that court had regardless of the decisions of the state courts under the act of September 24, 1789, (1 Stat. p. 91, c. 20, § 32; Rev. St. § 954,) which provides that any court of the United States "may at any time permit either of the parties to amend any defect in process or pleading upon such conditions as it shall, in its discretion, and by its rule, prescribe," and by the uniform practice in the circuit courts, even where the rule in the state courts does not permit the exercise of such a power. Erstein v. Rothschild, 22 Fed. Rep. 61, 64. The decisions of the supreme court of Arkansas, under the statutes of that state, were in accord with the federal statutes and practice, and this court cited and followed them. The opinions in these cases apply to questions of the class to which we have just referred; and upon those questions the decisions of the highest judicial tribunals of the states, construing their statutes governing pleading, practice, and procedure in common-law actions, are uniformly followed by the federal courts, as there stated.

But, on the other hand, the courts of the United States are not subordinate to the courts of the states. They constitute an independent judiciary system, the judges of which do not derive their

powers from the states, nor can the legislation of the states, or the decisions of their courts, determine the limits of those powers, or prescribe the duties their exercise imposes. One of the objects of the establishment of the federal courts, with jurisdiction to determine controversies between citizens of different states, was to provide a tribunal in each state where the rights of citizens of other states might be determined, unaffected by any possible influence that friendship for, or acquaintance with, a resident defendant might sometimes have in the local courts of his county. It was not the purpose of the act conforming the pleadings and practice of the federal courts to those of the state courts to prevent, or even to hinder, the accomplishment of this, or any other object for which the federal courts were established. It was not the intention of congress to require, by the passage of this act of conformity, the adoption by the circuit courts of any rule of pleading, practice, or procedure enacted by state statute, or announced by the decision of a state court, which would enlarge or restrict the jurisdiction of the federal courts, or prevent the wise administration of the law in the light of their own system of jurisprudence, as defined by their own constitution, as tribunals, and the acts of congress upon that subject. On the other hand, that act expressly reserves to the judges of those courts the right, and, we think, imposes upon them the duty, in the exercise of a wise judicial discretion, to reject any statute, practice, or decision that would have such an effect. Our views of the effect of this act of congress, and of the right and duty of the judges of the federal courts to reject statutes of the various states, rules of practice, and decisions of state courts that are antagonistic to the federal system of jurisprudence, or that tend to defeat the ends of justice, as administered in the federal tribunals, are well illustrated by the decisions upon this question rendered by the supreme court since the passage of this act, in 1872.

In Nudd v. Burrows, 91 U. S. 426, (decided in 1875,) the action had been tried in the circuit court for the northern district of Illinois. The practice act of that state absolutely required that the trial court should instruct the jury only as to the law, and that the jury should, on their retirement, take the written instructions of the court, and return them with their verdict. The judge of the circuit court had commented upon the evidence, and had refused to allow the jury to take to their room his written instructions, but the supreme court held that this was no error, and sustained the judge below.

In Railway Co. v. Horst, 93 U. S. 291, 300, (decided in 1876,) which was tried in the circuit court for the district of Indiana, the statute of that state and the practice of the state courts required the trial court to submit special questions to the jury whenever requested by counsel for either party. The circuit judge refused to do so, and it was insisted that the act of conformity required him to follow that practice, and that he erred in declining so to do. But the supreme court held otherwise, and Mr. Justice Swayne, in delivering the opinion of the court, said:

"The conformity is required to be 'as near as may be' not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose. It devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as congress doubtless expected they would do, any subordinate provision in such state statutes which, in their judgment, would unwisely encumber the administration of the law, or tend to defeat the ends of justice, in their tribunals."

In Association v. Barry, 131 U. S. 100, 120, 9 Sup. Ct. Rep. 755, (decided in 1889,) which was tried in the circuit court for the eastern district of Wisconsin, the statutes of that state, and the practice of the state courts, required the trial court, whenever requested by either party, to direct a special verdict. The circuit judge refused to do so, and his action was sustained by the supreme court.

In Erstein v. Rothschild, 22 Fed. Rep. 61, 64, (decided in 1884,) an action was brought, and a writ of attachment issued, in the circuit court for the eastern district of Michigan. The statutes of Michigan provided that before any writ of attachment was issued an affidavit should be filed, stating, among other things, that the debt sued upon was "due upon contract, express or implied, or upon judgment." The affidavit in this case did not contain this statement, and the defendants made a motion to quash the writ upon this ground, while the plaintiff made an application to amend the affidavit. The supreme court of Michigan had held that such an affidavit was insufficient, and incapable of amendment, and that the attachment issued upon it was void. On this subject, Mr. Justice Matthews, who delivered the opinion, said:

"It must be conceded that the supreme court of Michigan, in numerous decisions, have declared that the statutory proceedings in attachments are stricti juris, that they are proceedings in rem, and that the affidavit is jurisdictional. It follows that in the local jurisdiction of that state an affidavit defective in substance is not the subject of amendment, as without a sufficient affidavit there is no jurisdiction in the court, and the writ of attachment is void."

Nevertheless the learned justice refused to conform his practice and proceeding to the decisions of the supreme court of that state construing the state statutes of attachment, but permitted the affidavit to be amended, and sustained the writ.

In Southern Pac. Co. v. Denton, 13 Sup. Ct. Rep. 44, an action was brought in the circuit court for the western district of Texas. Neither the plaintiff nor the defendant was a resident in, or an inhabitant of, that district. These facts appeared in the complaint, and the defendant appeared specially, and demurred on that ground. The circuit court overruled the demurrer, the defendant answered, judgment was rendered against it, and upon writ of error the supreme court held that the demurrer was well taken. The statutes of Texas, however, provided that an appearance in behalf of a defendant, though in terms limited to the purpose of objecting to the jurisdiction of the court, should be a waiver of immunity from jurisdiction by reason of nonresidence. These provisions of the statutes had been held valid, and enforced, by the supreme court of Texas. The supreme court of the United States had held that they were not in conflict with the fourteenth amendment to the constitution of the United States; and the plaintiff insisted that

the federal courts were bound, by the act of conformity, to follow these statutes, and to hold that the defendant had waived its objection by its special appearance and demurrer to the complaint. But the supreme court held otherwise, and Mr. Justice Gray, who delivered the opinion of that court, said:

"Congress cannot have intended that it should be within the power of a state, by its statutes, to prevent a defendant sued in a circuit court of the United States, in a district in which congress has said that he shall not be compelled to answer, from obtaining a determination of that matter by that court in the first instance, and by this court on writ of error. To conform to such statutes of a state would 'unwisely incumber the administration of the law,' as well as 'tend to defeat the ends of justice' in the federal tribunals. The necessary conclusion is that the provisions referred to, in the practice act of the state of Texas, have no application to actions in the courts of the United States."

In Railway Co. v. Pinkney, (decided by the United States supreme court May 1, 1893,) 13 Sup. Ct. Rep. 859, the same question arose, and was decided in the same way. Mr. Justice Jackson, who delivered the opinion of that court, said:

"In the present case the precise question is whether the provisions of the Texas statutes which give to a special appearance, made to challenge the court's jurisdiction, the force and effect of a general appearance, so as to confer jurisdiction over the person of a defendant, are binding upon the federal courts sitting in that state, under the rule of procedure prescribed by the fifth section of the act of June 1, 1872, as reproduced in section 914 of the Revised Statutes. The words of this section, 'as near as may be,' were intended to qualify what would otherwise have been a mandatory provision, and have the effect to leave the federal courts some discretion in conforming entirely to the state procedure. These words imply that in certain cases it would not be practicable, without injustice or inconvenience, to conform literally to the entire practice prescribed for its own courts by a state in which the federal courts might be sitting."

If the circuit court was not bound to follow the statutes of Texas, and the uniform decisions of its highest judicial tribunal, and to take jurisdiction of these defendants who had specially appeared in that court, there is no reason why the circuit court of Kansas was bound to follow the decision of the supreme court of Kansas construing the statutes of that state, and to divide up and dismiss this action, of which it had acquired complete jurisdiction. The result is that the federal courts will conform the practice, pleadings, and forms and modes of proceeding in civil causes in the circuit courts, as near as may be, to the statutes of the states in which they are held, and to the practice of the courts in those states; but it is their right and duty to reject any subordinate provision of the state statutes, and any rule of practice of the state courts, which, in their judgment, will "unwisely incumber the administration of the law, or tend to defeat the ends of justice, in their tribunals." In this action there is a controversy between citizens of different states, sufficient in amount to give the circuit court jurisdiction. Congress has given the plaintiffs the right to have that controversy determined in that court, and it has imposed upon the circuit court the duty of determining it. To follow the practice adopted by the Kansas courts, to divide the amount in dispute here between two actions, of which the circuit

court would not have jurisdiction, and to dismiss those actions, would be to "unwisely incumber the administration of the law," and would "tend to defeat the ends of justice." The demurrer was rightly overruled, and the judgment is affirmed, with costs.