OHMAN v. CITY OF NEW YORK.

(Circuit Court, S. D. New York. March 8, 1909.)

1. COPYRIGHTS (§ 69*)—REMEDY FOR INFRINGEMENT—MAPS—ACTIONS AT LAW—
PLEADING.

The remedies provided by Rev. St. §§ 4965, 4970 (U. S. Comp. St.
1901, pp. 3414, 3416), for infringement of copyright of a map, etc., by in-
junction, and by the recovery of a penalty of $1 from the infringer "for
every copy of the same found in his possession," are exclusive, and an
action for damages for infringement cannot be maintained other than one
under such penalty provision, in which it must be alleged that copies
were found in defendant's possession.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 69.*]

2. ACTION (§ 44*)—JOINDER OF CAUSES—NEW YORK CODE.

Causes of action to recover penalties for infringement of copyright and
for damages for a tort not connected with copyright cannot be joined
in the same complaint under Code Civ. Proc. N. Y. § 484, which governs
the practice in the federal courts within that state.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 44.*]

3. COURTS (§ 329*)—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTRO-
VERSY—PLEADING.

A complaint alleging that plaintiff was a designer and publisher of
maps, and had acquired a reputation as such; that he designed and
published a certain map, of which defendant city published and circulated
in an official publication a mutilated copy, having thereon plaintiff's name,
to his "loss or damage in the sum of $6,000," but which does not allege
any special damage to plaintiff's business or reputation—does not state
a cause of action for the recovery of more than nominal damages, and the
action does not involve a sufficient amount or value to give a federal
court jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 897; Dec. Dig.
§ 329.*

Jurisdiction of circuit courts as determined by the amount in contro-
versy, see notes to Auer v. Lumbard, 19 C. C. A. 75; Tennent-Stribling
Shoe Co. v. Roper, 36 C. C. A. 459.]

At Law. Demurrer to complaint in action to recover penalties for
infringement of complainant's copyright of a map of the borough of
Manhattan, and others, and to recover damages for mutilating and sell-
ing maps made and designed by plaintiff.

Avery & Schlesinger (Frank C. Avery and James Hamilton, of coun-
sel), for plaintiff.

Francis Key Pendleton (Charles C. Gill, of counsel), for defendant.

RAY, District Judge. The complaint purports to set out seven sepa-
rate causes of action, five for the violation or infringement of copy-
rights for a map of the borough of Manhattan and a part of the Bronx,
N. Y., and a map of the Bronx, part of the city of New York, N. Y.,
and a map of the borough of Manhattan, N. Y., and a map of the bor-
ough of Queens; and plaintiff seeks to recover the statutory penalties
claimed to have been incurred by defendant because of the said viola-
tions or infringements. The sixth and seventh causes of action are to
recover damages for mutilating and selling maps made and designed by

plaintiff as his work, same having his name thereon. Each cause of action alleges that the plaintiff is a subject of the Empire of Great Britain and Ireland, temporarily domiciled and residing in the city and county of New York, in the Southern district of the state of New York, and that the defendant is a municipal corporation organized under the laws of the state of New York and domiciled in said city and county.

In addition, the first cause of action alleges that in the year 1898, there was duly copyrighted, pursuant to the laws of the United States, a map of the borough of Manhattan and a part of the borough of the Bronx, being a part of the said present city of New York, and that "prior to the year 1904 all the rights and interests in the said copyright had devolved upon and were held by the plaintiff"; also that the said original map, as copyrighted, had been recopyrighted, or the copyright thereof renewed, by the plaintiff, and that the same, as issued and published by him, was marked, in accordance with the laws of the United States in such case made and provided, "Copyright 1904 by A. R. Ohman."

The complaint then alleges that on or about May 25, 1906, the defendant city, pursuant to the laws of the state of New York, was the publisher and responsible editor of the City Record, a publication relating to the affairs of said city of New York, and that, by its servants, agents and employés, without the authority or license of the plaintiff, the said defendant did in such publication utter, publish, and circulate a copy or reproduction of the said copyrighted map of the plaintiff by inserting such copy or reproduction in the issue of the City Record of that date, May 25, 1906, and thereafter, without the authority or license of the plaintiff, did publish and distribute the said copy, with the name of the plaintiff, in the form and manner as set forth in the said copy of the City Record of that date. A copy of the said publication of that date containing said map is annexed to the complaint. The complaint also alleges that an edition of 12,000 copies of said Record of that date, without the authority or license of the plaintiff, was printed, published, and circulated by the defendant; that defendant in so doing willfully violated and infringed the rights of the plaintiff "in and to said map, and his copyright thereof, and the reproduction thereof, as secured to him by the laws of the United States." The complaint then says that this was done "to the plaintiff's loss and damage, and in and whereby the defendant incurred, under the laws of the United States, penalties, in all amounting to the sum of six thousand dollars."

The second cause of action is a duplication of the first, except that it relates to a map of the borough of the Bronx, a part of the city of New York.

Aside from the first allegation above stated to be found in such cause of action, the third cause of action reads as follows:

"Sixth. That in the year 1905 the plaintiff duly copyrighted, pursuant to the laws of the United States, a map of the borough of the Bronx, being part of the said present city of New York, and that the said city, in violation of the plaintiff's rights, and without his license or authority, caused to be reproduced and published, and issued and distributed, through, in and by the department of finance of the said city, copies and reproductions of the plaintiff's said copyrighted map, to his loss and damage, and for statutory penalties as provided by law, in the sum of five thousand (5,000) dollars."

The fourth cause of action is a duplication of the third, except it relates to a map of the borough of Manhattan.

The fifth cause of action is the same, except it relates to a map of the borough of Queens.

The sixth and seventh causes of action, so far as appears from the complaint, have nothing to do with a copyrighted map or publication of any kind or description, except that plaintiff had marked it "Copyright 1904 by A. R. Ohman."

These seem to be causes of action for a sort of libel or slander upon either the plaintiff, as a designer and publisher of maps, or on the map, mentioned therein, itself. There is no allegation or statement in these causes of action that the maps referred to therein and alleged to have been changed and mutilated by the defendant were ever copyrighted. These causes of action set forth that the plaintiff for 15 years has been engaged in the business of designing, preparing, and publishing maps, which is his business; that he has acquired a reputation as a competent, careful, and accurate designer and publisher of maps; and that, says the sixth cause of action, "during the year 1904 this plaintiff did design, add to, and improve a map already owned by him, and produced and published the same, it being a map of the borough of Manhattan and part of the Bronx, * * * and that said map was not given or dedicated to the public, but was marked by him, in accordance with the laws in such cases made and provided, 'Copyright 1904 by A. R. Ohman.'" and that such map had been sold, etc., and was well known as the design and production of the plaintiff. The complaint then alleges that the defendant then took and marked up and altered and mutilated a copy of such map, and then caused such marked-up, altered, and mutilated copy to be reproduced and published, containing thereon the name, "A. R. Ohman," as a supplement in the said City Record of May 25, 1906, and then caused 12,000 copies of such Record containing such marked-up, altered, and mutilated map to be circulated in the city of New York and elsewhere, "thereby causing a mutilated and altered copy of his map to be so circulated as if the same had been produced by him, to his loss and damage in the sum of six thousand (6,000) dollars." The seventh cause of action is the same, except it refers to a map of the borough of the Bronx. The complaint alleges a presentation of his claim for penalties and damages, and a refusal to adjust, settle, or pay same.

The defendant demurs on the ground that the alleged causes of action from 1 to 6, inclusive, do not state facts sufficient to constitute a cause of action; that the sixth and seventh do not state facts sufficient to constitute a cause of action; and that this court has no jurisdiction thereof. Also, that the complaint is multifarious, in that different causes of action relating to different subject matters have been improperly joined; that the causes of action relating to copyrights relate to different copyrights, and claim to recover statutory penalties for a violation of plaintiff's rights thereunder, and that 6 and 7 relate to claims for damages upon principles relating to the good will of trades, etc.

The first and second causes of action say that "in the year 1898 there was duly copyrighted, pursuant to the laws of the United States, a

map," etc., and that "prior to the year 1904 all the rights and interests in the said copyright had devolved upon and were held by the plaintiff; that the said original map as copyrighted had been recopyrighted, or the copyright thereof renewed, by the plaintiff," and that same was marked, etc., as required by law. Three, four, and five say "that in the year," giving it "the plaintiff duly copyrighted, pursuant to the laws of the United States, a map." Nothing is said as to these maps being marked copyright, etc. The defendant says these are mere statements of conclusions and not of facts, and that the complaint must set forth what was actually done in procuring the copyright; also, that no penalty can be recovered, as the complaint alleges that all were "distributed," and there is no allegation that a single copy was found in defendant's possession.

Title 60, c. 3, of the Revised Statutes of the United States, was amended (Act March 3, 1891, c. 565, 26 Stat. 1106 [U. S. Comp. St. 1901, p. 3405]), and the sections of the statute so amended that section 4956 read:

"No person shall be entitled to a copyright unless he shall, on or before the day of publication in this or any foreign country, deliver at the office of the Librarian of Congress, or deposit in the mail within the United States, addressed to the Librarian of Congress, at Washington, District of Columbia, a printed copy of the title of the book, map, chart, dramatic or musical composition * * * for which he desires a copyright. Nor unless he shall also * * * deliver at the office of the Librarian of Congress * * * or deposit in the mail within the United States addressed to the Librarian of Congress * * * two copies of such copyright book, map," etc.

By section 4952, it was provided that:

"The author, inventor, designer, or proprietor of any book, map, chart, * * * and the executors, administrators, or assigns of any such person, shall, upon complying with the provision of this chapter, have the sole liberty of printing, reprinting, copying, executing, finishing and vending the same," etc

This last section, 4952, was amended March 3, 1905 (Act March 3, 1905, c. 1432, 33 Stat. 1000 [U. S. Comp. St. Supp. 1907, p. 1021]), but in no way that affects this action.

Section 4965, as amended March 2, 1895 (Act March 2, 1895, c. 194, 28 Stat. 965 [U. S. Comp. St. 1901, p. 3414]), provides that:

"If any person, after the recording of the title of any map, chart, * * * as provided by this act, shall within the term limited [14 years], contrary to the provisions of this act, and without the consent of the proprietor of the copyright, first obtained in writing, signed in presence of two or more witnesses, engrave, etch, work, copy, print, publish, dramatize, translate, or impart, either in whole or in part, or by varying the main design with intent to evade the law, * * * he shall forfeit to the proprietor all the plates on which the same shall be copied and every sheet thereof, either copied or printed, and shall further forfeit one dollar for every sheet of the same found in his possession, either printing, printed, copied, published, imparted or exposed for sale * * * one half thereof to the proprietor and the other half to the use of the United States."

By section 4970, bills in equity may be filed, and the Circuit Courts of the United States are given power to grant injunctions to prevent the violation of rights secured by the laws relating to copyrights, and Judiciary Act, c. 7, § 629 (U. S. Comp. St. 1901, p. 504), confers

jurisdiction upon said courts "of all suits at law or in equity arising under the patent or copyright laws of the United States."

The said Act March 3, 1891, c. 565, 26 Stat. 1106 (U. S. Comp. St. 1901, p. 1110), also provides (section 13):

"That this act shall only apply to a citizen or subject of a foreign state or nation when such foreign state or nation permits to citizens of the United States of America the benefit of copyright on substantially the same basis as its own citizens:

"Or when such foreign state or nation is a party to an international agreement which provides for reciprocity in the granting of copyright, by the terms of which agreement the United States of America may, at its pleasure, become a party to such agreement.

"The existence of either of the conditions aforesaid shall be determined by the President of the United States by proclamation made from time to time as the purposes of this act may require."

There is no allegation in the complaint that these conditions exist.

By Act March 3, 1875, c. 137, § 1, 18 Stat. 470, as amended by Act March 3, 1887, c. 373, § 1, 24 Stat. 552, and corrected by Act Aug 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), it is provided:

"The Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars * * * in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid, or a controversy between citizens of the same state claiming lands under grants of different states, or a controversy between citizens of a state and foreign states, citizens, or subjects, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid."

Considering the first five causes of action by themselves, I am of the opinion that the demurrer to each is well taken. Each shows on its face that the plaintiff is a subject of the Kingdom of England and Ireland, Great Britain (I regard the use of the word "Empire" as immaterial), and fails to state the existence of facts which entitle him to the benefits of our copyright laws. It is true, however, that we have the necessary copyright relations with Great Britain. Act July 1, 1891, 27 Stat. 981, 982. I think our courts must take judicial notice of this fact. But it has been held (Ford v. Blaney A. Co. [C. C.] 148 Fed. 642) that:

"In an action for infringement of a copyright, it is not sufficient to allege generally in the bill or complaint that all conditions and requisites required by the laws of the United States to obtain a copyright have been complied with, but the specific acts done and necessary to constitute such compliance with the law must be affirmatively alleged, and the complaint must also show that the person in whose name the copyright was obtained was the person who owned the right and was entitled to it."

See, also, Trow City Directory Co. v. Curtin (C. C.) 36 Fed. 829; Chicago Music Co. v. Butler Co. (C. C.) 19 Fed. 758.

This complaint has no such allegations. Again, there is no allegation in either cause of action referred to that a single copy of the map was in or "found" in the "possession" of the defendant. It is not sufficient to allege that the defendant has caused such copies or sheets

to be printed, and has caused them to be circulated, or that it has had them in its possession. This is a penal statute, and must be strictly construed, not against, but in favor of, the defendant. The penalty of $1 is incurred "for every sheet of the same found in his possession"; that is, the possession of the person wrongfully engraving, printing, etc., the map; not otherwise. Bolles v. Outing Co., 175 U. S. 265, 268, 20 Sup. Ct. 94, 44 L. Ed. 156; Child v. New York Times Co. (C. C.) 110 Fed. 527. The statute is clear on its face, and is not susceptible of any other construction unless we do violence to the English language. This view is also fully sustained in Globe Newspaper Co. v. Walker, 210 U. S. 356, 367, 28 Sup. Ct. 726, 728, 52 L. Ed. 1096, where it is held:

"The right of an author in the United States to multiply copies of his works after publication is the creation of a new right by federal statute under constitutional authority and not a continuation of a common-law right. Wheaton v. Peters, 8 Pet. 590, 8 L. Ed. 1055.

"While a general liability or right created by statute without a remedy may be enforced by an appropriate common-law action, when a special remedy is coupled therewith, that remedy is exclusive. Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376.

"Although remedies given by a statute to protect property in copyright may be inadequate for the purpose intended, the courts cannot enlarge the remedy. Congress alone has power so to do by amending the statute.

"Congress having, by sections 4965-4970, Rev. St., provided a remedy for those whose copyrights in maps are infringed, a civil action at common law for money damages cannot be maintained against the infringers."

Said the court:

"To the owner of a copyright on a map is given, under section 4965, forfeiture of plates and sheets, and one-half the penalty of $1 for every sheet found in the defendant's possession; under section 4970, the right to proceed by injunction. It thus appears that Congress has prescribed the remedies it intends to give; this being true, 'however inadequate,' as Lord Kenyon said in Beckford v. Hood, supra [7 Term R. 620], 'no others can be resorted to.' "

This last case cited and quoted from settles the proposition that the first five causes of action cannot be sustained as causes of action to recover damages. Congress has given the right to copyrights, and provided the remedies for the violation of that right, and these remedies are exclusive.

This brings us to the consideration of the sixth and seventh alleged causes of action. I do not think either states facts sufficient to constitute a cause of action. Again, they are improperly joined with the causes of action to recover penalties. The absence of an allegation that the maps referred to in the sixth and seventh causes of action, and alleged to have been mutilated and printed and circulated in their mutilated form, were copyrighted, prevents the application of the doctrine of Globe Newspaper Co. v. Walker, supra. But no special damage is alleged to have resulted from the doing of the acts complained of. There is no allegation that the plaintiff was injured in his name or reputation as a man or as a designer, etc., of maps, or that he has lost any sale or sales or any business of any kind, or that he has lost employment or engagements in consequence of such acts. No facts or circumstances are alleged which would justify punitive damages. If we are to say that the complaint justifies the inference that de-

fendant took and converted a copy of the map, which copy was owned by the plaintiff, there is no allegation as to its value, and, as we may properly look to the map attached to the complaint and made a part of it, we are justified in saying that the copy itself had but little value. In the absence of allegations of special damage, damage to plaintiff's business or business reputation, I think the court must say that the damages laid, $6,000, are colorable, and inserted for the purpose of giving this court jurisdiction. It is evident that proof of special damages, or of damage to plaintiff's good name and reputation as a designer, etc., of maps, or to his business, could not be given under the allegations of this complaint. As a consequence, on the allegations of the complaint he can only recover nominal damages, if any. The result is that while there is a controversy between a citizen of the state of New York—the city of New York—and the subject of a foreign nation, state, or government, the amount in controversy does not exceed the sum of $2,000, exclusive of interest and costs, and this fact appears upon the face of the record, notwithstanding the plaintiff says he sustained damages in the sum of $6,000 and demands judgment accordingly. Barry v. Edmunds, 116 U. S. 550, 559, 560, 561, 6 Sup. Ct. 501, 29 L. Ed. 729; Bowman et al. v. Chicago & N. W. R. Co., 115 U. S. 611, 613, 6 Sup. Ct. 192, 29 L. Ed. 502; Hilton v. Dickinson, 108 U. S. 165, 174, 175, 2 Sup. Ct. 424, 27 L. Ed. 688; Lee et al. v. Watson, 1 Wall. 337, 339, 17 L. Ed. 557; Vance v. Vandercook Co., 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; North American T. & T. Co. v. Morrison, 178 U. S. 262, 20 Sup. Ct. 869, 44 L. Ed. 1061.

These cases settle the proposition that, in actions for damages as well as on money demands, we are to look to the record itself, or, on demurrer, to the complaint as a whole, and not merely to the allegation as to damages and the prayer for relief, in determining whether or not the amount in controversy exceeds the sum of $2,000. In Hilton v. Dickinson, supra, the court, at pages 174, 175, of 108 U. S., at page 430 of 2 Sup. Ct. (27 L. Ed. 688), said:

"It is undoubtedly true that, until it is in some way shown by the record that the sum demanded is not the matter in dispute, that sum will govern in all questions of jurisdiction; but it is equally true that, when it is shown that the sum demanded is not the real matter in dispute, the sum shown, and not the sum demanded, will prevail. * * * In this connection it is to be remarked that the amount as stated in the body of the declaration, and not merely the damages alleged, or the prayer for judgment at its conclusion, must be considered in determining whether this court can take jurisdiction."

The same is declared in Lee v. Watson, 1 Wall. 339, 17 L. Ed. 557. In Bowman et al. v. Chicago & N. W. R. Co., 115 U. S., at page 613, 6 Sup. Ct., at page 193, 29 L. Ed. 502, the court said:

"Here the suit is to recover damages for not transporting from Chicago to Marshalltown 1,000 kegs of beer. There are no allegations of special damage or malicious conduct. In the original declaration the claim was for only $1,200, and it was not until the case was actually decided, or about to be decided on its merits, that application was made for leave to increase the amount of the demand. Then it was manifestly done, not in the expectation of recovering more than was originally claimed, but to give color to the jurisdiction of this court."

In Barry v. Edmunds, 116 U. S., at pages 560–562, 6 Sup. Ct., at page 506, 29 L. Ed. 729, the court said:

"It is true, indeed, that in some cases it might appear as matter of law, from the nature of the case as stated in the pleadings, that there could not legally be a judgment recovered for the amount necessary to the jurisdiction, notwithstanding the damages were laid in the declaration at a larger sum. In the early case of Wilson v. Daniel, 3 Dall. 401, 407, 1 L. Ed. 655, decided in this court in 1798, under the judiciary act of 1789, then in force, it was declared by Chief Justice Ellsworth that: 'The nature of the case must certainly guide the judgment of the court; and, whenever the law makes a rule, that rule must be pursued. Thus, in an action of debt on a bond for £100, the principal and interest are put in demand, and the plaintiff can recover no more, though he may lay his damages at £10,000. The form of the action, therefore, gives in that case the legal rule. But in an action of trespass, or assault and battery, where the law prescribes no limitation as to the amount to be recovered, and the plaintiff has a right to estimate his damages at any sum, the damage stated in the declaration is the thing put in demand, and presents the only criterion to which, from the nature of the action, we can resort in settling the question of jurisdiction. The proposition, then, is simply this: Where the law gives no rule, the demand of the plaintiff must furnish one; but where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded.'

"The amount of damages laid in the declaration, however, in cases where the law gives no rule, is not conclusive upon the question of jurisdiction; but if upon the case stated there could legally be a recovery for the amount necessary to the jurisdiction and that amount is claimed, it would be necessary, in order to defeat the jurisdiction, since the passage of the act of March 3, 1875, for the court to find, as matter of fact, upon evidence legally sufficient, "that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case' within the jurisdiction of the court. Then it would appear to the satisfaction of the court that the suit 'did not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court.'

"In the present case the Circuit Court has not found, as matter of fact, that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case within the jurisdiction of the court. Its action is not based on evidence of an attempted fraud upon the jurisdiction of the court, but upon the assumption, as matter of law, that upon the face of the declaration no recovery could be legally had of an amount sufficient to make the matter in dispute equal to that required to maintain its jurisdiction. * * *

"The cause of action stated in the declaration is a willful and malicious trespass, in seizing and taking personal property with circumstances of aggravation, and averments of special damage. The trespass is alleged to have been committed by the defendant, colore officii, under the pretended authority of void process, in open defiance of known law, accompanied by conduct intended to bring the plaintiff into public contempt and odium, and amounting to oppression in office. * * * 'It is a well-established principle of the common law,' said Mr. Justice Grier in Day v. Woodworth, 13 How. 362, 371, 14 L. Ed. 181, 'that, in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff. * * * In actions of trespass, where the injury has been wanton and malicious, or gross and outrageous, courts permit juries to add to the measured compensation of the plaintiff, which he would have been entitled to recover had the injury been inflicted without design or intention, something further by way of punishment or example, which has sometimes been called "smart money."'"

In North American, etc., Co. v. Morrison, 178 U. S., at pages 266, 267, 20 Sup. Ct., at page 871, 44 L. Ed. 1061, the court said:

"While it has sometimes been said that it is the amount claimed by the plaintiff in his declaration that brings his case within the jurisdiction of the Circuit Court, that was in suits for unliquidated damages in which the amount which the plaintiff was entitled to recover was a question for the jury; an inspection of the declaration did not disclose, and could not disclose, but that the plaintiff was entitled to recover the amount claimed, and hence, even if the jury found a verdict in a sum less than the jurisdictional amount, the jurisdiction of the court would not be defeated. Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; Scott v. Donald, 165 U. S. 58, 89, 17 Sup. Ct. 265, 41 L. Ed. 632.

"But where the plaintiff asserts, as his cause of action, a claim which he cannot be legally permitted to sustain by evidence, a mere ad damnum clause will not confer jurisdiction on the Circuit Court, but the court on motion or demurrer, or of its own motion, may dismiss the suit. And such, we think, was the present case."

And in Vance v. W. A. Vandercook Co., supra, the court held:

"In determining from the face of a pleading whether the amount really in dispute is sufficient to confer jurisdiction upon a court of the United States, it is settled that, if from the nature of the case as stated in the pleadings there could not legally be a judgment for an amount necessary to the jurisdiction, jurisdiction cannot attach, even though the damages be laid in the declaration at a larger sum."

Here we have a case for damages in marking and using in an official publication a copy of plaintiff's map, with no allegation of damage to business or business reputation, no allegation of special damages, and no allegation of malice or of willful misconduct, and, as stated, I think that, assuming a cause of action is stated, the only damages recoverable, under the allegations, would be merely nominal damages. A person may not confer jurisdiction on the Circuit Court of the United States by alleging a simple trespass, and placing his damages at more than $2,000, when it is perfectly apparent, on the face of the complaint, he is entitled to nominal damages only.

And I do not think a plaintiff may unite in the same complaint causes of action to recover penalties for the infringement of copyrights and causes of action for a trespass or alleged wrongs such as this. "The sufficiency and scope of pleadings and the form and effect of verdicts, in actions at law, are matters in which the Circuit Courts of the United States are governed by the practice of the courts of the state in which they are held. Rev. St. § 914 (U. S. Comp. St. 1901, p. 684); Bond v. Dustin, 112 U. S. 604, 5 Sup. Ct. 296, 28 L. Ed. 835." This was the decision in Glenn v. Sumner, 132 U. S. 152, 10 Sup. Ct. 41, 33 L. Ed. 301; 2 Foster's Fed. Practice, 874; O'Connell v. Reed, 56 Fed. 531, 535, 5 C. C. A. 586; Roberts v. Lewis, 144 U. S. 656, 657, 12 Sup. Ct. 781, 36 L. Ed. 579; Central Transportation Co. v. Pullman Car Co., 139 U. S. 39, 40, 11 Sup. Ct. 478, 35 L. Ed. 55. Under section 484, Code Civ. Proc. N. Y., these causes of action cannot be joined. Sullivan v. N. Y., N. H. & H. R. Co. (C. C.) 11 Fed. 848; Motley v. Pratt, 13 Misc. Rep. 758, 35 N. Y Supp. 184; People v. Wells, 52 App. Div. 583, 65 N. Y. Supp. 319; De Wolfe v. Abraham, 151 N. Y. 186, 45 N. E. 455.

In Sullivan v. New York, N. H. & H. R. Co., supra, it was held that a cause of action to recover a penalty incurred for taking excessive fares and a cause of action to recover damages for personal injuries

for unlawful ejection from defendant's cars on a subsequent trip could not be joined in the same complaint. In Motley v. Pratt, 13 Misc. Rep. 758, 35 N. Y. Supp. 184, it was held that a cause of action to enforce the statutory liability of a director for the debts of a corporation for failure to file the annual report could not be joined in the same complaint with a cause of action to enforce the statutory liability for consenting to the creation of unsecured indebtedness in excess of the amount of the paid-up capital stock, both causes of action being penal in their nature and arising under different statutes. The demurrer was sustained on the ground there was an improper joinder of causes of action. In De Wolfe v. Abraham et al., supra, it was held that:

"Causes of action for slander and false imprisonment cannot be united in the same complaint, even if they originated simultaneously."

The court said:

"We think to so hold [that they could be] is to ignore a distinction that exists in all jurisdictions where the common law is administered."

The court then holds that the New York Code of Civil Procedure will not permit such a joinder. It is clear to my mind, neither at common law nor under the New York Code can a plaintiff unite in the same complaint a cause of action to recover a penalty given by a federal statute for the violation of a copyright with one for an injury to property rights or business, or business reputation.

It follows that the demurrer must be sustained, with costs.

The plaintiff may elect upon which of the two classes of action he will proceed, if he elects to proceed at all, and, on payment of the costs to be taxed by the clerk within 20 days after taxation, may file and serve an amended complaint as to the penalties or as to the other alleged grounds of action, but not as to both. As to the causes of action not proceeded upon, the defendant is entitled to a final judgment dismissing the complaint with costs.